No. 23-3449

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CPC PATENT TECHNOLOGIES PTY LTD.,

*Petitioner-Appellee*,

v.

APPLE INC.,

*Respondent-Appellant*.

Appeal from the United States District Court for the
Northern District of California, Oakland,
No. 4:21-mc-80091-JST, Judge Jon S. Tigar.

## APPLE INC.'S OPENING BRIEF

SETH SPROUL
FISH & RICHARDSON, PC
12860 El Camino Real, Suite 400
San Diego, CA 92130

JAMES R. SIGEL
JOEL F. WACKS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-6948
JSigel@mofo.com

*Counsel for Respondent-Appellant Apple Inc.*

MARCH 4, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), respondent-appellant Apple Inc. states that it has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

Dated: March 4, 2024

/s/ James R. Sigel

James R. Sigel

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF AUTHORITIES ................................................ iv

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF THE ISSUES..........................................1

INTRODUCTION ................................................................2

STATEMENT OF THE CASE ............................................4

    A.    Legal Background .............................................4

    B.    Factual Background..........................................5

        1.    CPC acquires a portfolio of patents ............................5

        2.    CPC sues Apple in the United States.........................5

        3.    CPC sues Apple in Australia..................................7

    C.    Procedural Background ......................................7

        1.    CPC files a Section 1782 application ..........................7

        2.    The magistrate judge denies CPC's application ........................8

        3.    The district court denies CPC's motion for de novo review of the magistrate judge's order ................................8

        4.    This Court reverses ........................................8

        5.    The magistrate judge again denies CPC's application ..............9

        6.    CPC seeks de novo review....................................11

        7.    The district court grants CPC's motion ..................12

        8.    The district court denies Apple's motion to alter or amend the judgment..............................................14

        9.    The PTAB invalidates CPC's patent claims...........................15

        10.    The district court grants Apple's stay motion...........................16

    SUMMARY OF ARGUMENT .............................................17

STANDARD OF REVIEW ...................................................................19

ARGUMENT .....................................................................................20

I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING CPC'S SECTION 1782 APPLICATION .................................20

    A.    CPC'S Discovery Request Is Unduly Intrusive And Burdensome ...................................................................20

        1.    CPC seeks extremely confidential information .......................21

        2.    Any protections for Apple's information are uncertain...........23

        3.    CPC has not shown why it needs the information it seeks.......25

        4.    The district court's contrary determination does not withstand scrutiny ...................................................................27

    B.    The Remaining *Intel* Factors Do Not Support CPC............................32

        1.    The first *Intel* factor does not favor CPC...................................32

            a.    CPC, not Apple, should bear the burden of proof.........33

            b.    CPC's assertion that it intends to sue an Apple affiliate does not support granting discovery ................38

        2.    The district court abused its discretion in resolving the two *Intel* factors the parties did not address ....................................39

II.    AT A MINIMUM, THIS COURT SHOULD VACATE AND REMAND FOR THE DISTRICT COURT TO CONSIDER WHETHER SECTION 1782 DISCOVERY REMAINS APPROPRIATE GIVEN RECENT DEVELOPMENTS ............................45

CONCLUSION .................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (2015)................................................................4

*Andover Healthcare, Inc. v. 3M Co.*,
   817 F.3d 621 (8th Cir. 2016) ........................................21, 23, 24, 29

*In re Application of Chevron Corp.*,
   762 F. Supp. 2d 242 (D. Mass. 2010)...............................35, 36

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) ................................................40

*Baxalta Inc. v. Genentech, Inc.*,
   No. 16-mc-80087-EDL, 2016 WL 11529803
   (N.D. Cal. Aug. 9, 2016)...............................................24, 30

*Bayer AG v. Betachem, Inc.*,
   173 F.3d 188 (3d Cir.1999) .....................................................36

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................37

*In re Belparts Grp., N.V.*,
   No. 3:21-mc-0062 (VAB), 2021 WL 4942134
   (D. Conn. Oct. 22, 2021) ........................................................23

*Campbell v. United States Dist. Court*,
   501 F.2d 196 (9th Cir.1974) ...................................................46

*In re Chevron Corp.*,
   633 F.3d 153 (3d Cir. 2011) ...................................................36

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ...............................................9, 45

*Dep't of Caldas v. Diageo PLC*,
   925 F.3d 1218 (11th Cir. 2019) ..............................................37

iv

*Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002) ..................................................19, 23, 30

*Greenlaw v. United States*,
    554 U.S. 237 (2008)....................................................................40, 42

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)....................................................................*passim*

*IPCom GMBH & Co. KG v. Apple Inc.*,
    61 F.Supp.3d 919 (N.D. Cal. 2014)....................................................34

*Khrapunov v. Prosyankin*,
    931 F.3d 922 (9th Cir. 2019) ..................................1, 4, 27, 35, 47, 48

*In re Letters Rogatory from Tokyo Dist. Prosecutor's*
    *Off., Tokyo, Japan*,
    16 F.3d 1016 (9th Cir. 1994) .............................................................1

*London v. Does 1-4*,
    279 Fed. Appx. 513 (9th Cir. 2008)....................................................20

*In re Microsoft Corp.*,
    No. C06-80038 JF (PVT), 2006 WL 825250
    (N.D. Cal. Mar. 29, 2006)...................................................................34

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ......................................................20, 28

*In re Sailed Tech. (Beijing) Co.*,
    No. 2:22-cv-01396, 2023 WL 3568151
    (W.D. Wash. May 18, 2023)................................................................34

*Saucillo v. Peck*,
    25 F.4th 1118 (9th Cir. 2022) ...........................................................38

*In re Schlich*,
    893 F.3d 40 (1st Cir. 2018)......................................................34, 35, 37

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ...............................................................43

*Thompson v. Runnels*,
705 F.3d 1089 (9th Cir. 2013) ...................................................44, 45

*Todd R. v. Premera Blue Cross Blue Shield of Alaska*,
825 Fed. Appx. 440 (9th Cir. 2020)....................................................42

*United States v. Cronic*,
466 U.S. 648 (1984)............................................................................43

*United States v. Reynolds*,
345 U.S. 1 (1953)................................................................................27

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020)...............................................40, 41, 42, 46

*United States v. Yates*,
16 F.4th 256 (9th Cir. 2021) ......................................................41, 42

*United States v. Zubaydah*,
595 U.S. 195 (2022).............................................................................27

*Via Vadis Controlling GmbH v. Skype, Inc.*,
No. CIV. A. 12-MC-193-RGA, 2013 WL 646236
(D. Del. Feb. 21, 2013) ...................................... 13, 21, 22, 28, 39, 43

*Washington Mutual, Inc. v. United States*,
856 F.3d 711 (9th Cir. 2017) .............................................................38

## Statutes

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1782......................................................................*passim*

28 U.S.C. § 1782(a) ....................................................4, 5, 33, 35, 39

35 U.S.C. § 103 ....................................................................................16

## Other Authorities

*Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00600
(PTAB Oct. 13, 2023) ...................................................................16, 46

*Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00601
(PTAB Sept. 27, 2023) ...................................................................16, 47

*Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00602
(PTAB Sept. 27, 2023) ...................................................................16, 47

Declaration of William C. Easttom II in Support of Plaintiff's Motion
for Partial Summary Judgment of Infringement, *CPC Patent Techs.
PTY Ltd. v. Apple Inc.*, 3:22-cv-02553-RFL, ECF No. 89
(N.D. Cal. Mar. 13, 2022) ...............................................................6, 26

Fed. R. App. P. 4(a)(4)(A)(4) ...........................................................1

Fed. R. Civ. P. 26(b)(1)....................................................20, 32, 48

Fed. R. Civ. P. 26(b)(2).....................................................................20

Fed. R. Civ. P. 26(c)..........................................................................20

Fed. R. Civ. P. 72 ........................................................................45, 46

Fed. R. Civ. P. 59(e).........................................................................15

Order Granting Apple's Unopposed Motion to Stay Pending Inter
Partes Review, *CPC Patent Techs. PTY Ltd. v. Apple Inc.*,
No. 3:22-cv-02553-RFL, ECF No. 146 (N.D. Cal. Nov. 10, 2022).....................7

Yanbai Andrea Wang, *Exporting American Discovery*,
87 U. Chi. L. Rev. 2089 (2020) ...................................................35, 36

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1782. The district court's order granting CPC Patent Technologies PTY Ltd.'s Section 1782 application is a final order appealable under 28 U.S.C. § 1291. *Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019); *accord, e.g.*, *In re Letters Rogatory from Tokyo Dist. Prosecutor's Off., Tokyo, Japan*, 16 F.3d 1016, 1018 n.1 (9th Cir. 1994) (a "district court's orders made pursuant to § 1782 are final, and thus appealable under 28 U.S.C. § 1291"). That order was entered on January 3, 2023. ER-93. Apple Inc. filed a timely motion to alter or amend the judgment on January 31, 2023. ER-45. That motion was denied on October 11, 2023. ER-17. Apple filed a timely notice of appeal on November 10, 2023. ER-208; *see* Fed. R. App. P. 4(a)(4)(A)(4).

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion by granting CPC's application for discovery of extremely sensitive information regarding Apple's biometric security technology for use in an as-yet-unfiled German patent action.

2. If this Court does not reverse, whether it should vacate and remand so that the district court can assess whether discovery remains appropriate given subsequent developments, including the invalidation of CPC's related U.S. patent claims.

## INTRODUCTION

CPC, an Australian patent-holding company, filed an application under 28 U.S.C. § 1782 asking to obtain some of Apple's most confidential information. Specifically, CPC sought evidence—including source code—showing the functioning of biometric security measures that secure personal information contained on millions of users' devices. While CPC allegedly needs this evidence to file a patent infringement suit in Germany, it had litigated a parallel U.S. infringement suit without relying on such extremely sensitive information. And if CPC does eventually file suit in Germany using this information, no U.S. court will be able to prevent its intentional or inadvertent disclosure by the German court—or even by CPC itself. It is thus no surprise that the magistrate judge recommended that CPC's application be denied as unduly burdensome and invasive.

But the district court rejected this recommendation and granted CPC's extraordinary request. In reaching that conclusion, that court committed multiple errors of law and logic, any one of which is sufficient to warrant setting aside its order.

Most significantly, in concluding that CPC's Section 1782 request was not unduly burdensome and invasive, the district court presumed that because sensitive information can be produced in domestic litigation, it can likewise be produced for use in foreign litigation. The court ignored, among other things, the significant

differences in the protective measures available in German and U.S. courts, and the impossibility of controlling whether and how information is disclosed in Germany. That is a particular concern here given that CPC has no meaningful assets in this country, making it unclear how any U.S. protective order could be enforced against it.

The district court also independently erred in evaluating the other factors that govern Section 1782 requests. As to one—whether the respondent is a party in the foreign proceeding—the court erroneously shifted the burden of proof to Apple, while also misunderstanding this factor's relevance where CPC seeks discovery to *initiate* a foreign proceeding. As to the other two—the nature of the foreign tribunal, and whether the request contravenes foreign or U.S. policy—the court violated the basic principle of party presentation that governs our adversarial system, concluding these factors favored CPC even though CPC had not pressed that argument.

In any event, intervening factual developments have undermined much of the premise of CPC's Section 1782 application. Since the district court ruled, the Patent Trial and Appeal Board invalidated the claims of the U.S. analog to the German patent that CPC purportedly plans to assert in its German suit. If the district court's order is not reversed outright, it should be vacated, and the case remanded so that the district court can apply the correct legal standards in light of this development.

## STATEMENT OF THE CASE

### A.    Legal Background

Since 1855, Congress has authorized federal courts to aid in the production of evidence for use in foreign proceedings in certain circumstances.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  That authorization is now codified in 28 U.S.C. § 1782.  *Id.*  Under the current version of the statute, obtaining such assistance requires the applicant to establish:  "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"  *Khrapunov*, 931 F.3d at 925 (quoting 28 U.S.C. § 1782(a)).

"[E]ven where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery."  *Id.* at 926.  Four non-exclusive factors—often referred to as the *Intel* factors—govern district courts' discretion.  *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (2015).  "First, when the person from whom discovery is sought is a participant in the foreign proceedings . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  Second, courts

4

may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* Third, courts may "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. Fourth, courts may evaluate whether a request is "unduly intrusive or burdensome." *Id.* at 265.

### B. Factual Background

#### 1. *CPC acquires a portfolio of patents*

CPC is a patent holding company incorporated in Australia. ER-200. It has no American shareholders, office, or employees. ER-60-70. Its only American assets are certain patents related to biometric security, which it acquired as part of a broader portfolio of patents in 2019. ER-200; ER-60-70. Having obtained these patents, CPC began using them as a basis for suing Apple.

#### 2. *CPC sues Apple in the United States*

In February 2021, CPC sued Apple in the Western District of Texas, alleging that Apple's biometric security measures (such as Face ID and Touch ID) infringed three of CPC's patents: U.S. Patent Nos. 9,269,208 (the '208 patent), 9,665,705 ('705 patent), and 8,620,039 ('039 patent). ER-199. The case was subsequently

transferred to the Northern District of California. ER-162-163; *see CPC Patent Tech. PTY Ltd. v. Apple Inc.*, No. 22-cv-02553-EJD (N.D. Cal.).

A robust protective order governs this U.S. patent proceeding. ER131. Under that order, "[a]ll Protected Material"—meaning any material designated, at a minimum, "Confidential"—"shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation." ER-134-35 (capitalization omitted). The order's most restrictive protections apply to "confidential, proprietary, and/or trade secret Source Code." ER-143-45. The procedures governing source code's disclosure and inspection span six pages. ER-145-51. Among other things, those procedures dictate that source code may be inspected only in a secured room without internet access and can be disclosed only to the parties' outside counsel or consultants, not their employees. ER-143-45.

Pursuant to this protective order, Apple produced ample confidential information, including source code. ER-169-70. Nevertheless, in moving for summary judgment of infringement of claim 1 of the '705 patent, CPC relied largely on non-sensitive, publicly available sources. ER-100-01 (citing Declaration of William C. Easttom II in Support of Plaintiff's Motion for Partial Summary Judgment of Infringement, *CPC Patent Techs. PTY Ltd. v. Apple Inc.*, No. 3:22-cv-02553-RFL (N.D. Cal. Mar. 13, 2022), ECF No. 89). This action was later stayed

pending the PTAB's review of CPC's asserted patents. Order Granting Apple's Unopposed Motion to Stay Pending Inter Partes Review at 3, *CPC Patent Techs. PTY Ltd. v. Apple Inc.*, No. 3:22-cv-02553-RFL, ECF No. 146 (N.D. Cal. Nov. 10, 2022).

### 3. *CPC sues Apple in Australia*

CPC also sued Apple in Australia. It alleged infringement of the Australian biometric security patents corresponding to the American patents underlying its suit in the United States. ER-72-77. CPC never filed a Section 1782 application in the United States seeking discovery in aid of this Australian litigation. Closing submissions in that proceeding concluded in February 2024, and a decision is expected in the coming months.

### C. Procedural Background

### 1. *CPC files a Section 1782 application*

The present proceeding began in April 2021, when CPC invoked Section 1782 and filed an application seeking an *ex parte* order authorizing discovery from Apple "for use in contemplated patent infringement proceedings in the Federal Republic of Germany." ER-190. CPC's application represented that it "intend[ed] to file suit for patent infringement against Apple Retail Germany B.V. & Co. KG in Germany, asserting the German patent corresponding to the '705 Patent." ER-190. CPC sought to serve Apple with a subpoena for 15 categories of documents "sufficient to

describe" the functionality of Apple's biometric security technology, including both Touch ID and Face ID.  ER-196-97.

### 2.  *The magistrate judge denies CPC's application*

Magistrate Judge Cousins denied CPC's *ex parte* application.  Judge Cousins concluded that CPC met "the statutory requirements of § 1782."  ER-186. But, focusing on the fourth *Intel* factor, he found that CPC's request was "unduly intrusive or burdensome."  ER-186 (quoting *Intel*, 542 U.S. at 265).

### 3.  *The district court denies CPC's motion for de novo review of the magistrate judge's order*

CPC moved for de novo review of the magistrate judge's order.  The district court denied that motion, holding that the correct standard of review was for clear error.  ER-182.  Applying that standard, the court concluded that "[g]iven the nature of CPC's proposed discovery requests, as well as the pending litigation in Texas, Judge Cousins acted within his discretion to deny CPC's application as 'unduly intrusive or burdensome.'"  ER-182-83 (quoting *Intel*, 542 U.S. at 265).

### 4.  *This Court reverses*

CPC appealed to this Court, which "vacate[d] the district court's order . . . because the district judge should have reviewed the magistrate judge's decision de novo."  *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 803 (9th Cir. 2022). The Court explained that a ruling on "a freestanding subpoena request" under Section 1782, "filed on its own and not in conjunction with another federal lawsuit[,]

. . . necessarily disposes of the ultimate relief sought in the federal case." *Id.* at 808 (quotation marks omitted). Therefore, the Court held, it is a "dispositive matter" that the district court should review de novo. *Id.* at 807. The Court did not reach the merits of CPC's request for discovery, instead remanding for the district court to apply the correct standard of review or refer the case for further review by the magistrate judge. *Id.* at 810.

### 5. *The magistrate judge again denies CPC's application*

On remand, the district court referred the matter to Magistrate Judge Cousins. In a joint letter brief, the parties addressed the fourth *Intel* factor, disputing whether the requested discovery was unduly burdensome or invasive. ER-169-77. CPC did not address the other three *Intel* factors, while Apple asserted they were "neutral." ER-174.

Judge Cousins again recommended denying CPC's Section 1782 application. ER-162. Judge Cousins began by accepting Apple's assertion that "[t]he first three *Intel* discretionary factors are neutral and do not weigh in favor of or against granting CPC's application." ER-165. In a footnote, however, Judge Cousins found the first *Intel* factor in fact "weigh[ed] against granting CPC's" application "because Apple would be a participant to the potential German litigation and could be ordered to produce discovery through that proceeding." ER-165 n.1.

Judge Cousins again focused on the fourth *Intel* factor, finding that CPC's requests were "unduly intrusive and burdensome." ER-165. He set forth "four reasons" for this conclusion. ER-165.

"First," Judge Cousins explained, "CPC is requesting information that is strictly confidential and central to Apple's products." ER-165. He emphasized that "[t]he hardware and software for Apple's secure facial recognition and touch identification technology is highly sensitive and central to its business, and CPC's request of documents 'sufficient to show' the functioning of these central processes could require Apple to disclose highly confidential source code." ER-165.

Second, Judge Cousins found that "there are insufficient safeguards to protect the confidentiality of the discovered information in Germany." ER-166. He explained that "[e]ven with the parties' protective order and CPC's assurances of confidentiality, the Court does not have jurisdiction to enforce protection of Apple's confidential information in Germany." ER-166. And "[g]iven that CPC has yet to file a case" in Germany, there were no "established protections to keep the information confidential." ER-166. It was thus "uncertain whether this highly sensitive technology can be protected in the case of inadvertent or intentional disclosure." ER-166.

Third, Judge Cousins found that "CPC ha[d] not demonstrated that Apple's publicly available information regarding Face ID and Touch ID technology is

insufficient for it to determine whether it has grounds to file suit in Germany." ER-166. He noted that "Apple ha[d] published various articles outlining its work in facial recognition and touch identification, including a May 2021 report titled 'Apple Platform Security' that 'describes the protection and flow of user identi[t]y information through Apple products.'" ER-166.

Fourth, Judge Cousins found that "CPC's wording of the discovery request [wa]s too vague and cumbersome to enforce." ER-166.

### 6. CPC seeks de novo review

CPC again moved the district court for de novo review of the magistrate judge's report. ER-104. CPC stated that because "the Magistrate Judge's Report denies the Petition based on the first and fourth discretionary [*Intel*] factors," its motion "focuse[d] on explaining why the Magistrate Judge's decision was erroneous" as to these two factors. ER-115-16. CPC mentioned the second and third *Intel* factors only in a brief footnote. ER-117 n.9. CPC requested an opportunity to submit supplemental briefing if the district court decided "to revisit" those two factors. ER-116.

Because CPC did not directly challenge Judge Cousins's finding that the second and third factors were neutral, Apple's opposition likewise accepted that determination, addressing only the first and fourth *Intel* factors. ER-96-97.

11

### 7.    The district court grants CPC's motion

The district court granted CPC's motion, concluding that all four *Intel* factors—and not just the two CPC contested—weighed in CPC's favor.  ER-87-93.

The district court concluded that the first factor favored CPC given "CPC's stated intention to file a German lawsuit solely against Apple Retail Germany." ER-87.  In the court's view, it was Apple's burden to "offer more than pure speculation that it will be named as a party to the German proceeding."  ER-87. "Because Apple fail[ed] to do so, this factor weigh[ed] in favor of granting CPC's petition."  ER-87.

As for the second and third *Intel* factors, the district court acknowledged that "[t]he parties d[id] not address these factors because the report and recommendation found that the factors were neutral."  ER-88.  Nevertheless, the court found that the second factor favored CPC's Section 1782 application because "[m]any other courts . . . have held that Germany is receptive to judicial assistance."  ER-88.  The court found that the third factor likewise weighed in CPC's favor because "there is no evidence that a German court would not be receptive to the discovery sought by CPC or that CPC is attempting to circumvent German proof-gathering restriction[s]." ER-88.

As for the fourth factor, the district court first concluded that CPC's request was not "unduly intrusive or burdensome" even though it sought the "production of

highly confidential" information.  ER-89.  Citing a variety of discovery orders in domestic litigation (that is, not Section 1782 proceedings), the court reasoned that "parties routinely produce source code subject to protective orders in patent infringement cases."  ER-89.  In dismissing Apple's reliance on *Via Vadis Controlling GmbH v. Skype, Inc.*, No. CIV. A. 12-MC-193-RGA, 2013 WL 646236 (D. Del. Feb. 21, 2013), which had rejected a similar Section 1782 application seeking the disclosure of source code for use in Germany, the district court declared that "if the *Via Vadis* court meant to express a bright-line rule that a court can never order production of source code in response to a Section 1782 petition, the Court disagrees with that holding."  ER-90.

The district court next concluded that, although "the protections that would be afforded in German court are unknown," a protective order entered in this litigation would "be sufficient to protect any confidential information that may be produced." ER-90.  The court reasoned that "[t]he Court has jurisdiction over CPC and Apple, and as signatories to the protective order, they are bound by its terms."  ER-90.  It did not explain how its protective order could override any order that the German court might make regarding the treatment of evidence introduced in that (hypothetical) proceeding, or how the protective order could be meaningfully enforced against CPC if it violated the order, whether inadvertently or not.

13

The district court similarly dismissed the relevance of publicly available information describing the functionality of Apple's biometric security technology, stating that "some of the information requested by CPC is not publicly available or accessible to CPC." ER-91. The court believed that Apple had contradicted itself by saying "both that the information responsive to CPC's subpoena is publicly available and that it is highly confidential." ER-91. The court also concluded that CPC's requests were "proportional to the needs of the case because CPC claims that many of the responsive documents likely have already been produced in the United States Action." ER-91-92.

In a footnote, the district court acknowledged that "Section 1782 could be used as a stalking horse to attack a protective order issued in another matter." ER-92 n.2. Although the court recognized that the protective order precluded CPC from using the confidential Apple information obtained in the U.S. patent litigation (ER-84), the court concluded, without further elaboration, that "this does not seem to be such a [stalking horse] case." ER-92 n.2.

Finally, the district court concluded that "Apple has sufficient information to determine what the document requests require." ER-92.

### 8.    *The district court denies Apple's motion to alter or amend the judgment*

Invoking Federal Rule of Civil Procedure 59(e), Apple moved to alter or amend the judgment. ER-45. Apple contended that, because neither party had

contested the magistrate judge's conclusion that the third and fourth *Intel* factors were neutral, evidence relevant to those factors was previously "unavailable" and thus warranted consideration under Rule 59(e). ER-50. Focusing on the "'nature of the foreign tribunal'" and whether CPC was seeking to evade "'policies of . . . the United States'" (ER-51-52 (quoting *Intel*, 542 U.S. at 264)), Apple sought to submit, among other things, a declaration from an expert on German law detailing German courts' limited protections for sensitive information. ER-78-82.

The district court denied Apple's motion. ER-10. Rejecting Apple's argument that its newly submitted evidence was proper under Rule 59(e) because the court had resolved issues the parties had not briefed, the court declared it was "not required to adopt either of the parties' positions." ER-14. The court reasoned that "[o]nce an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties." ER-14. The court also declared that it could *sua sponte* address the second and third *Intel* factors because it was not "bound by Judge Cousins's determination, given the Ninth Circuit's directive to review de novo that decision." ER-14.

### 9. *The PTAB invalidates CPC's patent claims*

Meanwhile, in September and October 2023, the PTAB invalidated all challenged claims of CPC's asserted patents in the U.S. litigation, including the '705 patent, the U.S. counterpart corresponding to the German patent CPC had claimed

would be the basis for its prospective suit in Germany, and the '208 patent related to the '705 patent. *See Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00600 (PTAB Oct. 13, 2023) (Patent 8,620,039 B2); *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00601 (PTAB Sept. 27, 2023) (Patent 9,269,208 B2); *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00602 (PTAB Sept. 27, 2023) (Patent 9,665,705 B2), *petitions for review pending*, *CPC Patent Techs. Pty Ltd. v. Apple Inc.* (Fed. Cir. Nos. 24-1278, 24-1365). The PTAB concluded that all of the challenged claims were obvious and thus unpatentable under 35 U.S.C. § 103. Paper 22, *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00600 at 61-62; Paper 31, *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00601 at 62-64; Paper 31, *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*, IPR2022-00602 at 58-59.

### 10. *The district court grants Apple's stay motion*

Apple filed a timely notice of appeal. ER-207-08. It also moved for a stay of discovery pending the resolution of this appeal. *See* ER-4.

The district court granted Apple's motion for a stay. ER-4-6. As the court recognized, "Apple's arguments raise 'serious legal questions' notwithstanding this Court's having not adopted those arguments in its order." ER-7. The court also found that both the "risk of mootness" and "the wrongful disclosure of sensitive information" caused Apple to face a risk of irreparable harm absent a stay, rejecting

CPC's argument that the existing protective order mitigated either of these risks. ER-8.

## SUMMARY OF ARGUMENT

I.  CPC's Section 1782 application should have been denied.  The district court abused its discretion in concluding that any of the four *Intel* factors—let alone all of them—weighed in favor of CPC's request.

A.  Most significantly, CPC's request is unduly intrusive and burdensome under the fourth *Intel* factor.  CPC seeks some of Apple's most sensitive information, including source code, related to the functioning of the biometric security technology that protects millions of users' confidential data.  But CPC does not and cannot provide any assurances that this information will remain secure if used in as-yet unfiled litigation in Germany.  Nor has CPC demonstrated that it has any need for this sensitive information that could possibly justify these risks.

The district court's rationales for nevertheless authorizing such invasive discovery do not withstand scrutiny.  The court dismissed the extreme sensitivity of the information CPC seeks simply because such evidence may be produced in *domestic* litigation, disregarding that the protections available in foreign litigation are far weaker.  The court declared that a U.S. protective order entered in this case would protect Apple's information, ignoring that the order would not bind a German court and would not necessarily restrain a foreign patent-holding corporation like

CPC. And the court presumed that simply because CPC *requested* this information, CPC needed it to bring suit in Germany—thereby failing to conduct *Intel*'s mandated inquiry into whether the requesting party's actual need for the information justifies the costs.

B.1. The first *Intel* factor—whether the respondent is a party in the foreign litigation—likewise does not support CPC. The district court committed two separate legal errors in concluding otherwise. First, while neither party presented any evidence on this factor, the court faulted Apple for failing to demonstrate that it would be the defendant in CPC's hypothetical German suit. In a Section 1782 proceeding, the burden of proof should have been on CPC, not Apple. Second, the court failed to appreciate that this *Intel* factor is intended to assess the applicant's need for discovery where the foreign litigation has already been filed. It has little or no relevance here, where there is no certainty as to what entity CPC may name as defendant in a prospective German suit.

B.2. The district court disregarded a fundamental rule in concluding that the second and third *Intel* factors favored CPC: the parties, not the court, decide which issues to raise. Because CPC did not contest that these factors were neutral, neither party addressed them before the district court. But the court raised and then resolved these issues itself, without affording the parties the opportunity for supplemental briefing. Had Apple briefed these factors, it could have demonstrated that the

magistrate judge was correct to find them neutral. The district court provided no viable justification for its departure from the basic principle of party presentation.

II. At a minimum, this Court should vacate and remand in light of the PTAB's ruling that the challenged claims of CPC's asserted patents are invalid. By demonstrating that CPC's hypothetical German patent infringement suit would lack merit, the PTAB's decision further undermines any contention that CPC is entitled to the invasive discovery is seeks. The district court should be given the opportunity to determine how this development affects the nature of the foreign proceedings, the German court's receptivity to the requested evidence, and CPC's showing of need.

### STANDARD OF REVIEW

The district court's order granting CPC's Section 1782 application is reviewed for abuse of discretion. *Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). A district court necessarily abuses its discretion if it applies the wrong legal rule, which is a question this Court determines de novo. *Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014). Even where the trial court has applied the correct legal rule, it abuses its discretion where its decision is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotation marks omitted).

## ARGUMENT

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING CPC'S SECTION 1782 APPLICATION

Correct application of the considerations that govern Section 1782 proceedings compels the rejection of CPC's attempt to export some of Apple's most sensitive information for unspecified use in as-yet-hypothetical litigation in Germany. The district court abused its discretion in concluding otherwise.

### A. CPC'S Discovery Request Is Unduly Intrusive And Burdensome

The fourth *Intel* factor—whether a Section 1782 request is "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265—is the most significant here. As *Intel* recognized, the "controls on discovery" ordinarily available to district courts can be used to "prevent discovery of . . . business secrets and other confidential information." *Id.* at 266 (citing Fed. R. of Civ. Proc. 26(b)(2), (c).) Determining whether Section 1782 discovery would be "unduly" burdensome requires balancing "the need for the evidence" with the "invasion required." *London v. Does 1-4*, 279 Fed. Appx. 513, 514-15 (9th Cir. 2008); *see also* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case, considering," *inter alia*, "the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

20

Here, this balance weighs heavily in Apple's favor for three interrelated reasons. CPC seeks: (1) extremely confidential Apple information, (2) without adequate assurances that its confidentiality can be maintained, and (3) without any showing that the production of such confidential information is necessary. In these circumstances, the invasion of Apple's interests far outweighs CPC's purported need for the evidence it seeks.

### 1.    *CPC seeks extremely confidential information*

There should be little question that the information CPC seeks is extremely sensitive. CPC's discovery request targets some of Apple's most closely guarded information, including source code related to Apple's biometric security features. *See* ER-165. The "highly sensitive nature of the requested" information "weigh[s] heavily against ordering discovery." *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-24 (8th Cir. 2016) (affirming denial of Section 1782 application seeking discovery for use in German patent litigation). As other courts have found, "[s]ource codes are the most sensitive and confidential property." *Via Vadis*, 2013 WL 646236, at *3. That is why "[w]hen disclosed in U.S. litigation, extreme measures are ordered to protect their confidentiality." *Id.* And CPC's request is particularly intrusive because it concerns the functionality of security features critical to the operation of Apple's devices for millions of users worldwide. *See* ER-88-93. If this information is misused, the potential consequences are staggering. ER-97-98.

21

The extreme sensitivity of the information CPC requests is illustrated by the protective order entered in the U.S. patent litigation between CPC and Apple. CPC acknowledges that the information it seeks here is covered by that highly restrictive protective order. ER-169-70. That order forbids, among other things, disclosure of source code to CPC's employees. ER-141-43, ER-145-47. It also unequivocally bars using confidential material disclosed in the patent litigation in other proceedings—including, of course, the putative German litigation that is the basis for CPC's Section 1782 application. ER-131. These extensive protections confirm just how burdensome CPC's request for that same information here is: these materials can be produced only in the most restrictive fashion possible.

Moreover, other courts have found that a Section 1782 application is unduly burdensome where it would require disclosure forbidden by a protective order. *Via Vadis*, 2013 WL 646236, at *3 (request was unduly burdensome in part because "production of the source code would intrude on the protective order from . . . prior litigation" which "specifically prohibit[ed] disclosure of the source code in the proceedings in Germany and Luxembourg"); *In re Belparts Grp., N.V.*, No. 3:21-mc-0062 (VAB), 2021 WL 4942134, at *7 (D. Conn. Oct. 22, 2021) (similar); *see also Four Pillars*, 308 F.3d at 1079 (district court did not abuse its discretion by denying "a discovery order . . . under § 1782 [that] would improperly frustrate the

[protective] order of" another federal district court).  Yet that is precisely what CPC seeks here.

### 2.    Any protections for Apple's information are uncertain

The invasiveness of CPC's request is compounded by the uncertainty that this information's "confidentiality can be maintained" if exported for use in foreign litigation.  *Andover*, 817 F.3d at 623-24.  The Eighth Circuit confronted similar circumstances in *Andover*, where a Section 1782 applicant sought to discover trade secrets for use in a patent-infringement action it had filed in Germany.  *Id.* at 622. The *Andover* court correctly held that the fourth *Intel* factor weighed against discovery that would leave this sensitive information "at the mercy of German procedures."  *Id.* at 624.  As the Eighth Circuit noted, unlike in the United States, "there is no firm procedure in Germany to prevent disclosure to in-house counsel," "interested third parties may have access to the full case file," and "German courts do not frequently grant requests to exclude confidential information from their decisions."  *Id.*

If anything, the risk here is even more acute than it was in *Andover* because CPC has not yet even *filed* its German action.  It is thus impossible to say how a German court would rule on a hypothetical request to maintain the confidentiality of Apple's information, or what third parties might participate in that hypothetical litigation and gain access to Apple's information.  Indeed, even if (contrary to

23

ordinary German practice) only CPC's outside counsel were allowed access to this confidential information, at this juncture it is not even clear who CPC's German counsel might be.

Nor can the protective order entered in the district court provide Apple's confidential information adequate protection. First, as *Andover* held in rejecting that same proposition, "any [protective] order would have to permit disclosure to the German court at a minimum, thus leaving [the respondent's] trade secrets at the mercy of German procedures." *Id.* Apple has done everything it can to assure that the U.S. protective order entered in this case is as expansive as possible. *See* ER-18-44. But nothing in that protective order can or does purport to dictate what a German court would do with this extremely sensitive information. After all, "the limited scope of" an American court's jurisdiction, "does not, of course, extend to controlling the actions of" foreign courts. *Baxalta Inc. v. Genentech, Inc.*, No. 16-mc-80087-EDL, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016) (finding fourth *Intel* factor weighed against discovery where it was "unclear that [a] proposed protective order would govern disclosure to or use by the [foreign] court or the parties or lawyers before it, or sufficiently protect . . . confidential information in that forum if it were disclosed either inadvertently or intentionally").

Second, in the particular circumstances here, an additional concern arises: it is not clear that the district court could meaningfully enforce the protective order

24

even against CPC.  As an Australian patent-holding company, CPC has no American shareholders or assets (other than the invalid patents it has asserted in the U.S. patent litigation).  ER-200.  There is therefore no obvious mechanism for the district court to sanction CPC's misuse—intentional or inadvertent—of Apple's confidential information.[1]

### 3. CPC has not shown why it needs the information it seeks

On the other side of the ledger, CPC has identified no pressing need for this extremely sensitive information that could possibly justify the risks of disclosure. CPC asserts that it needs this information to initiate its prospective German patent-infringement suit.  ER-190.  But it has never explained *why*.  Ample public information details the non-sensitive aspects of Apple's biometric security technology.  That includes a 219-page whitepaper published in May 2021 that describes in detail "the protection and flow of user identity information through Apple products," including the "components used in [Apple's] biometric

---

[1] Indeed, CPC may have already violated the protective order entered in the U.S. patent litigation:  while that order prohibits "us[ing]" the protected materials produced in that proceeding "directly or indirectly for any . . . purpose whatsoever, including without limitation any other litigation" (ER-131, ER-135), CPC seemingly "used" those protected materials in this proceeding by leveraging its knowledge of them to support its Section 1782 application.  *See* ER-169-70 (CPC arguing that "Apple had produced some of the responsive documents in the other action pending between the parties" and that "Apple could simply reproduce those documents in this action").

processing." ER-100. CPC has provided no basis for thinking that the additional, far more sensitive, information it seeks here would provide it any greater ability to initiate its German infringement suit than this publicly available information.

In fact, CPC's conduct in the U.S. patent proceeding belies its assertion that it needs the additional information it seeks here. In that litigation, CPC filed a motion for summary judgment of infringement of claim 1 of the '705 patent (the U.S. equivalent of the purported basis for the hypothetical German action), and it relied largely on the publicly available documents. ER-100-01; *see CPC Patent Technologies PTY Ltd. v. Apple Inc.*, No. 5:22-cv-02553-EJD (N.D. Cal.), ECF No. 89 at 6, 7, 8, 9, 10, 11, 12, 14. If CPC believed it could prove infringement of the '705 patent based on these sources, presumably they would be adequate for CPC to attempt to file its case in Germany.[2]

Because, as its own conduct shows, CPC could seemingly obtain what it needs to initiate its hypothetical German lawsuit from public sources, it should not be able to inflict intrusive and burdensome discovery on Apple. *See United States v. Zubaydah*, 595 U.S. 195, 213 (2022) (plurality opinion) (recognizing that "public

---

[2] Apple is not, of course, conceding either here or anywhere else in this brief that CPC could plead, let alone prove, a *meritorious* patent infringement claim in Germany with this public information (or, for that matter, *any* information). Rather, Apple's point is simply that to the extent CPC hopes to bring a German patent-infringement claim, there is no basis for thinking that the additional information it seeks in this Section 1782 proceeding will provide it any greater basis for doing so.

availability of information" can "diminish[] the need for the discovery" of sensitive information); *accord, e.g.*, *United States v. Reynolds*, 345 U.S. 1, 11 (1953) ("Here, necessity was greatly minimized by an available alternative, which might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege."). That is all the more true because if CPC simply took the step of filing its German suit, any further question of whether it needs the confidential information it seeks here might readily be put to rest: among other things, CPC's pleading in Germany may be deficient as a matter of German law, and its patents may not be valid or unenforceable in the first place. *Cf. Khrapunov*, 931 F.3d at 925 (recognizing that Section 1782 application should be denied where foreign proceeding has concluded). Especially at this stage, any hypothetical advantage CPC might gain from additional, more sensitive information does not outweigh the costs of Apple providing it.

### 4. *The district court's contrary determination does not withstand scrutiny*

The district court relied on a variety of justifications for dismissing these concerns and rejecting the magistrate judge's finding that CPC's request was "unduly intrusive or burdensome." ER-89. None hold up: the court's rationales were "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Mujica*, 771 F.3d at 589 (quotation marks omitted).

27

*First*, with respect to the extreme sensitivity of the information CPC seeks, the district court simply noted that "parties routinely produce source code subject to protective orders in patent infringement cases." ER-89. That perfunctory explanation fails to account for the differences between the discovery orders in the *domestic* patent infringement cases the district court cited (*see* ER-89), and CPC's Section 1782 request for discovery in aid of a proposed German action. Source code may be produced in American courts because "extreme measures are" available "to protect their confidentiality." *Via Vadis*, 2013 WL 646236, at *3. Indeed, CPC asserts Apple produced much of the information CPC seeks here pursuant to the comprehensive protective order entered in the U.S. patent litigation. ER-169-70. But the measures available to protect sensitive information in German courts are far more limited. *Andover*, 817 F.3d at 623-24. And here, with no litigation even filed, they are wholly uncertain. Just because sensitive information may, in some circumstances, be safely disclosed in U.S. litigation does not necessarily mean that it should be produced in a Section 1782 action, as the district court illogically presumed.

Recognizing this fundamental distinction between domestic and foreign litigation does not require adopting a "bright-line rule that a court can never order production of source code in response to a Section 1782 petition," as the district court erroneously characterized Apple's position. ER-90. Instead, it merely requires

accounting for the uncertain procedures available in the foreign court and assessing the risks of disclosure of any sensitive information. *E.g.*, *Andover*, 817 F.3d at 623-24. Without addressing these factors, a district court cannot determine whether a Section 1782 request is, in fact, "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.

*Second*, and similarly, the district court unjustifiably assumed that the protective order entered in this litigation would "be sufficient to protect any confidential information that may be produced in response to CPC's subpoena." ER-90. The court was certainly correct that "CPC and Apple" are bound by the order and subject to the court's jurisdiction. ER-90. But that misses the point. Most obviously, any German court—or any third parties participating in a hypothetical German proceeding—would not be bound by the protective order, and the German court could allow for disclosure of these materials regardless of any obligations a U.S. protective order might impose on CPC and Apple. *Baxalta*, 2016 WL 11529803, at *8; *see supra* pp. 23-24. The district court inexplicably overlooked this possibility. *See* ER-90.

The district court also overlooked the possibility that CPC might evade the protective order even if it was technically bound by it. *See* ER-90. The court did not explain how it could enforce the order against CPC if CPC violated it. *See supra* pp. 24-25. And while the court also recognized that "Section 1782 could be used as

a stalking horse to attack a protective order issued in another matter," it summarily dismissed the possibility that CPC was seeking to undermine the existing protective order in the pending U.S. patent action. ER-92 n.2. Its declaration that "this does not seem to be such a case" (ER-92 n.2) is difficult to reconcile with the facts of this case: as the court itself acknowledged, CPC brings this Section 1782 action because that protective order otherwise prohibits CPC from using the evidence it seeks. ER-84; *cf. Four Pillars*, 308 F.3d at 1079 (affirming denial of Section 1782 application where petitioner sought to use confidential information covered by a protective order entered in prior litigation between the parties).

The district court again rejected a strawman in caricaturing Apple's position as being "that a protective order entered by a United States district court could never effectively guard confidential information in foreign proceedings." ER-90. No such categorical rule is necessary. Rather, Apple's position is simply that a protective order will not necessarily protect the extremely sensitive information at issue here, given the uncertainties associated with any potential German litigation and the difficulties in securing CPC's compliance. *See supra* pp. 23-25. Nothing in the district court's order accounts for these risks.

*Third*, the district court likewise identified no viable basis for concluding that CPC had any need for this information that could outweigh these concerns. Instead, the court simply assumed that CPC needed the information it sought. The court

dismissed the relevance of the publicly available information detailing key aspects of Apple's biometric security technology by observing that "Apple's briefing demonstrates that [] some of the information requested by CPC is not publicly available or accessible to CPC." ER-91. And it appeared to accept CPC's contention that Apple was somehow being inconsistent in arguing "both that the information responsive to CPC's subpoena is publicly available and that it is highly confidential." ER-91.

This mischaracterization of Apple's argument reveals the district court's fundamental error. It is, of course, Apple's position that CPC's Section 1782 application seeks extremely confidential information. But the fact that CPC *seeks* that information does not mean that CPC *needs* it. Rather, Apple's point is that CPC has not shown that it needs the confidential information it sought in this proceeding in order to file its case in Germany. *Supra* pp. 25-27; *accord, e.g.*, ER-102 ("CPC cannot reconcile its stated need for highly confidential documents to bring its German lawsuit with the fact it filed a summary judgment motion for infringement based almost entirely on Apple's publicly available documents."). The district court did not address that basic point, instead erroneously equating the information CPC requests in this proceeding with the information it needs to bring suit in Germany. ER-91.

31

In so doing, the district court improperly distorted the undue burden analysis. Determining whether a request is "proportional to the needs of the case" (Fed. R. Civ. P. 26(b)(1)) requires assessing the requesting party's actual "needs." The district court never made that assessment. Its observation that some of the documents CPC requested may have been produced in the patent litigation (ER-91-92) does not fill that gap, as there is no basis for presuming that CPC needs the same information to file its putative German lawsuit that it secured in the U.S. patent litigation. And in any event, as already discussed, the burdens and risks associated with disclosing information for use in German courts is far greater than in American litigation, rendering CPC's requests here disproportionate. *Supra* pp. 21-25. The district court abused its discretion in concluding otherwise.

### B.     The Remaining *Intel* Factors Do Not Support CPC

The district court's misapplication of the fourth *Intel* factor is alone reason enough to reverse. But the court also erred in concluding that the remaining three factors favored CPC. Those errors independently warrant reversal, or at the very least remand.

#### 1.     *The first* Intel *factor does not favor CPC*

The first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding[.]" *Intel*, 542 U.S. at 264. If that person is a participant, the "need for § 1782(a) aid generally is not as apparent," as the "foreign

tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.*

Here, the district court concluded that this factor favored CPC because CPC had "indicated that it would file the German action against Apple Retail Germany and not against Apple." ER-87. The court rejected Apple's contention that CPC might also name it as a defendant, holding that Apple was required to "offer more than pure speculation that it will be named as a party to the German proceeding." ER-87. In reaching that conclusion, the district court committed two related legal errors: (1) it imposed the burden of proof on Apple, and (2) it misunderstood how this first factor should apply when no foreign litigation has been filed.

### a. *CPC, not Apple, should bear the burden of proof*

As the party seeking to prove its entitlement to discovery under Section 1782, CPC, not Apple, should have borne the burden of showing that the *Intel* factors weighed in its favor. "The Supreme Court has not established the appropriate burden of proof, if any, for any of the discretionary [*Intel*] factors." *In re Schlich*, 893 F.3d 40, 49 (1st Cir. 2018). Nor has this Court addressed that question. *See In re Sailed Tech. (Beijing) Co.*, No. 2:22-cv-01396, 2023 WL 3568151, at *3 n.5 (W.D. Wash. May 18, 2023). District courts in this circuit take at least three different approaches in allocating the burden of proof. *Compare In re Microsoft Corp.*, No. C06-80038 JF (PVT), 2006 WL 825250, at *2 n.3 (N.D. Cal. Mar. 29, 2006) (the applicant bears

"the burden of showing such assistance is warranted"), *with IPCom GMBH & Co. KG v. Apple Inc.*, 61 F.Supp.3d 919, 922 (N.D. Cal. 2014) (placing the burden on the party that opposes Section 1782 discovery), *and with Sailed Tech.*, 2023 WL 3568151, at *3 n.5 ("weigh[ing] the *Intel* factors without placing a burden on either party").

The correct approach is to apply the same default rule that applies elsewhere: the party seeking judicial relief bears the burden of proof. Indeed, this Court has already held that a Section 1782 applicant bears the burden of demonstrating that Section 1782's three statutory prerequisites are satisfied. *Khrapunov*, 931 F.3d at 926; *see also Schlich*, 893 F.3d at 49 (noting that "[i]t is undisputed that . . . the party seeking discovery under § 1782 . . . ha[s] the burden of establishing that all the statutory requirements were met in order for the court to even consider exercising its discretion to grant the requested relief"). There is no reason that Section 1782 applicants should not also bear the burden of showing their requests are consistent with the *Intel* factors.

Allocating the burden to the requesting party makes particular sense in this context. Section 1782 applications are routinely filed and granted *ex parte*. Yanbai Andrea Wang, *Exporting American Discovery*, 87 U. Chi. L. Rev. 2089, 2110 (2020). Courts should not expect the side that may not even participate in the proceedings to bear the burden of proof. *Schlich*, 893 F.3d at 51. And even where

the respondent has notice and participates, the Section 1782 applicant will generally be better positioned to produce evidence relevant to the *Intel* factors. Because Section 1782 applicants must be "interested" in the foreign proceedings (28 U.S.C. § 1782(a)), they are typically parties to that proceeding and thus able to provide evidence relating to the second and third *Intel* factors, both of which concern the nature of the foreign tribunal and litigation. *Intel*, 542 U.S. at 264; *see In re Application of Chevron Corp.*, 762 F. Supp. 2d 242, 252 (D. Mass. 2010) (noting the difficulty for a respondent having to prove a negative and demonstrate "a foreign tribunal's *non* receptivity to the discovery sought") (emphasis in original). And where, as here, the foreign litigation has not yet been filed, the Section 1782 applicant will be best positioned to provide some basis for concluding that it will sue a particular entity, as may be relevant to the first *Intel* factor. *Intel*, 542 U.S. at 264; *but see infra* pp. 38-39. Finally, placing the burden of proof on the applicant will also help counter district courts' tendency to reflexively approve Section 1782 requests—which, as one recent analysis determined, are granted over 90% of the time, often based on "simplified tests [that] systematically tip the scale toward granting foreign discovery requests while failing to properly apply *Intel*'s discretionary factors." Wang, *supra*, 87 U. Chi. L. Rev. at 2121, 2138.

Although some courts have imposed the burden on the Section 1782 respondent, these decisions are not persuasive. Many rely on precedent that pre-

dates *Intel*. *E.g., In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (citing a pre-*Intel* decision, *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir.1999)). These decisions thus fail to account for nature of the inquiry *Intel* requires. *See Chevron*, 762 F.Supp.2d at 251-52 (declining to follow pre-*Intel* Second Circuit decision placing the burden of proof on the respondent). Others rely on analogies to domestic discovery. *E.g., Bayer*, 173 F.3d at 190. But there are critical differences between domestic discovery and Section 1782 proceedings. As explained above (*supra* pp. 34-35), a Section 1782 applicant will often be in the best position to produce evidence regarding the foreign proceeding—a critical element of the *Intel* inquiry that has no parallel in domestic discovery disputes. Moreover, in an ordinary civil case, plaintiffs must generally provide some threshold demonstration that they have a plausible claim on the merits to justify imposing the burdens of discovery. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). Section 1782 applicants confront no similar screening mechanism; if they do not at least bear the burden of demonstrating the *Intel* factors are satisfied, they may be able to secure onerous discovery without making any meaningful showing of their entitlement to it.

At the very least, if this Court does not hold that the Section 1782 applicant bears the burden of proof, it should join the First and Eleventh Circuits in holding that neither the applicant nor the respondent bears the burden. *See Schlich*, 893 F.3d

at 50; *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019). Under this approach—which recognizes the fundamental problems in requiring the responding party to prove the *Intel* factors weigh against discovery—courts "neutrally analyze[] the contentions and supporting evidence presented by all the parties in deciding whether to exercise their discretion." *Schlich*, 893 F.3d at 50; *see also Caldas*, 925 F.3d at 1223 (adopting *Schlich*'s approach).

Here, the district court applied a contrary rule, requiring Apple to prove that the first *Intel* factor did not weigh in CPC's favor. Neither CPC nor Apple presented any evidence on this factor. Instead, CPC relied on repeated attorney assertions in its briefing that it "intend[ed]" to file suit only against "Apple Retail Germany B.V. & Co. KG" (ER-116; *see, e.g.*, ER-190), while Apple responded by pointing out that "because CPC has yet to file its German action," Apple could potentially be named as a party (ER-96-97). In the district court's view, this absence of evidence meant that CPC prevailed. Requiring that Apple "offer more than pure speculation that it will be named as a party to the German proceeding," the court concluded that this "factor weighs in favor of granting CPC's petition." ER-87. In misallocating the burden of proof to Apple, the court committed legal error. *See Washington Mutual, Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017) ("question whether the district court applied the correct burden of proof" is a "question[] of law"). And where, as here, "a district court's findings are based upon an incorrect legal standard,

the appropriate remedy is to remand so that findings can be made in accordance with the applicable legal standard." *Saucillo v. Peck*, 25 F.4th 1118, 133 (9th Cir. 2022) (quotation marks omitted).

### b. CPC's assertion that it intends to sue an Apple affiliate does not support granting discovery

In any event, whatever the proper allocation of the burden of proof, the district court erred in concluding that the first *Intel* factor supported CPC's request for discovery here, where no foreign action had yet been filed. In setting forth this first factor, *Intel* contemplated *ongoing* foreign litigation. The Court reasoned that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. In other words, the Court's focus was on the applicant's "need" for Section 1782 discovery, and it reasoned that such a "need" would typically be less significant where the Section 1782 respondent is also a litigant in an existing foreign proceeding. *See id.*

That reasoning has no application here. CPC claims that it needs the discovery it seeks to initiate a suit in Germany. ER-190. Whether it would ultimately sue Apple Retail Germany B.V. & Co. KG or Apple Inc. in that German proceeding has no logical bearing on CPC's need for the requested information. In fact, as explained above, CPC has never explained why it requires this information to bring suit. *Supra*

38

pp. 25-27. CPC's unsupported assertion that it does not plan to sue Apple in its hypothetical German suit does nothing to increase its showing of need. That is particularly true given that CPC has never presented any evidence as to *why* it would sue Apple's affiliate rather than Apple. Nevertheless, the district court treated CPC's supposed "intent[]" to sue Apple's German affiliate as an additional factor that "weighed in favor of granting" CPC's request for discovery. ER-87-88; *see also* ER-89-90 (distinguishing *Via Vadis*, 2013 WL 646236, in part on the ground that the first *Intel* factor had pointed the other way in that case). By rigidly applying this *Intel* factor when it provides no indication of CPC's actual need for the discovery sought, the district court abused its discretion.

### 2. *The district court abused its discretion in resolving the two* Intel *factors the parties did not address*

The district court likewise abused its discretion in concluding that the second and third *Intel* factors weighed against Apple. Magistrate Judge Cousins had agreed with Apple's uncontested assertion that these factors were neutral. ER-165. Neither party seriously disputed that finding. ER-115-16; ER-96-103. But even while expressly acknowledging that "[t]he parties d[id] not address these factors," the district court nevertheless resolved them, finding that both favored CPC's discovery request. ER-88.

In reaching that conclusion, the district court violated a rule essential to "our adversarial system of adjudication": "the principle of party presentation." *United*

39

*States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "[O]ur system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (quotation marks and alterations omitted). Thus, "in both civil and criminal cases, in the first instance and on appeal . . . , [courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)) (first alteration in original); *accord, e.g.*, *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). "That rule reflects [courts'] limited role as neutral arbiters of legal contentions presented [by the parties], and it avoids the potential for prejudice to parties who might otherwise find themselves losing a case on the basis of an argument to which they had no chance to respond." *United States v. Yates*, 16 F.4th 256, 270-71 (9th Cir. 2021).

The Supreme Court recently reiterated the importance of this foundational rule in *Sineneng-Smith*. There, a criminal defendant represented by competent counsel had challenged her conviction on appeal. 140 S. Ct. at 1578. Rather than address the arguments the defendant pressed, a panel of this Court named "three *amici* and invited them to brief and argue issues framed by the panel, including a question [the defendant] herself never raised earlier." *Id.* (alterations omitted). The panel then accepted that newly raised argument and reversed. *Id.* The Supreme

Court held "that the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id.* Although there are "circumstances in which a modest initiating role for a court is appropriate," the panel's "radical transformation of this case [went] well beyond the pale" and required vacatur of the judgment. *Id.* at 1579, 1582.

The district court here similarly violated the party presentation principle by interjecting issues not raised by either party. ER-88. "No extraordinary circumstances justified" that departure. *See Sineneng-Smith*, 140 S. Ct. at 1581. If anything, the court's decision to *sua sponte* interject new issues into this proceeding was less justified than the panel's in *Sineneng-Smith*. Not only was CPC represented by competent counsel, but its rights at stake here pale in comparison to those at issue in a criminal proceeding. *Cf. Greenlaw*, 554 U.S. at 243-44 ("To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights."); *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 Fed. Appx. 440, 442 (9th Cir. 2020) (the principle "naturally applies all the more in a case such as this, involving a specialized area of civil law and competent, highly experienced counsel on both sides"). Moreover, unlike the panel in *Sineneng-Smith*, the district court did not even afford the parties an opportunity to address the issues it raised. 140 S. Ct. at 1581 ("Counsel for the parties were permitted, but not required, to file supplemental briefs

limited to responding to any and all amicus/amici briefs . . . .") (quotation marks and emphasis omitted). That was despite CPC's express request for supplemental briefing if the court were to "revisit" these two *Intel* factors (a request upon which Apple, in opposition, reasonably relied). ER-116. At a minimum, the court should have directed the parties to submit argument before concluding these factors favored CPC. *Yates*, 16 F.4th at 271.

The district court's resolution of these two *Intel* without such briefing also illustrates one of the key reasons the party-presentation principle is so foundational: absent adversarial testing of the issues, courts are more likely to reach erroneous results. *See United States v. Cronic*, 466 U.S. 648, 655 (1984) ("Truth . . . is best discovered by powerful statements on both sides of the question.") (alteration and quotation marks omitted). That is the case here.

The court found that the second *Intel* factor—"the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" (*Intel*, 542 U.S. at 264)—favored CPC because "[m]any other courts . . . have held that Germany is receptive to judicial assistance from a federal court." ER-88. But the district court did not consider why those courts reached that conclusion, or whether the result in those cases depended on facts absent here. Apple could have pointed out that some other courts have found that Germany was *not* receptive to

U.S. judicial assistance.  *E.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) ("In this case, the German government was obviously unreceptive to the judicial assistance of an American federal court.").  Apple also could have pointed out that receptivity notwithstanding, other courts have refused Section 1782 applications based on other features of German tribunals, such as the uncertain protections they afford sensitive information.  *Via Vadis*, 2013 WL 646236, at *2-3.  While the district court should have assessed this second *Intel* factor in light of the particular circumstances of this case, it instead uncritically assumed that a handful of prior decisions necessarily demonstrated that this factor favors granting all Section 1782 applications related to German litigation.

Similarly, the district court found that the third *Intel* factor favored CPC because "there is no evidence that a German court would not be receptive to the discovery sought by CPC or that CPC is attempting to circumvent German proof-gathering restriction[s]."  ER-88.  But the third *Intel* factor asks whether the applicant is attempting "to circumvent . . . policies of a foreign country *or the United States*."  *Intel*, 542 U.S. at 265 (emphasis added).  Apple could have explained that CPC's Section 1782 petition does circumvent a policy of the United States:  as detailed above, CPC's petition seeks to obtain and use Apple's confidential information in ways prohibited by a U.S. protective order.  *Supra* pp. 22-23.  But because the parties

43

did not address this *Intel* factor, the district court failed to even consider U.S. policy. *See* ER-88.

The district court's justifications for resolving these issues without adversarial testing—offered in the court's order denying Apple's motion to alter or amend the judgment—both fail. The court cited *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013), for the proposition that "[o]nce an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties." ER-14. But *Thompson* merely recognized that courts "have the authority to identify and apply the correct legal standard" once an issue is before them. *Thompson*, 705 F.3d at 1098 (holding that it could determine which Supreme Court precedent "was 'clearly established Federal law' for purposes of § 2254(d)(1)" in evaluating habeas petitioner's claim that state court had violated clearly established law). The district court here did not identify the correct legal standard governing an issue the parties had presented. Instead, it *sua sponte* raised and resolved two new issues that the parties had not briefed. ER-88; ER-115-16.

Equally flawed is the district court's other justification: that it was not "bound by Judge Cousins's determination, given the Ninth Circuit's directive to review de novo that decision." ER-14. That is a different issue from whether the district court could resolve issues the parties had never meaningfully contested. Nothing in this Court's decision holding that the denial of a Section 1782 application is a dispositive

44

matter (*CPC Patent Technologies Pty Ltd.*, 34 F.4th at 803) altered the basic rule that, with respect to such dispositive matters, the "district judge must determine de novo any part of the magistrate judge's disposition *that has been properly objected to.*" Fed. R. Civ. Proc. 72(b)(3) (emphasis added). And even assuming the district court correctly reviewed de novo this aspect of Judge Cousins's decision,[3] there could be no basis for finding Judge Cousins erred given the parties' arguments: Judge Cousins simply adopted Apple's uncontested assertion that these *Intel* factors were neutral. ER-165. Ultimately, whatever standard of review applies, it is the parties' presentation that limits the issues the court may properly resolve. *Sineneng-Smith*, 140 S. Ct. at 1579. The district court violated that basic principle.

## II. AT A MINIMUM, THIS COURT SHOULD VACATE AND REMAND FOR THE DISTRICT COURT TO CONSIDER WHETHER SECTION 1782 DISCOVERY REMAINS APPROPRIATE GIVEN RECENT DEVELOPMENTS

If this Court does not reverse, or at least vacate and remand, due to the errors detailed above, it should vacate and remand to allow the district court to address the significant developments since the court granted CPC's Section 1782 application. CPC's request for discovery is premised on its purported intent to file suit based on

---

[3] *But see* Fed. R. Civ. Proc. 72, Advisory Committee Notes, 1983 Addition, subdivision (b) (where there is no objection, district court should "satisfy itself that there is no clear error on the face of the record") (citing *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974)).

the "German patent corresponding to the '705 Patent" in the United States.  ER-190.
But after the district court granted CPC's application and Apple moved to alter or
amend that order, the PTAB invalidated all challenged claims of CPC's asserted U.S.
patents, including the '705 patent.  Paper 22, *Apple Inc. v. CPC Patent Techs. Pty,
Ltd.*, IPR2022-00600 at 61-62; Paper 31, *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*,
IPR2022-00601 at 62-64; Paper 31, *Apple Inc. v. CPC Patent Techs. Pty, Ltd.*,
IPR2022-00602 at 58-59.  Assuming the balance of the *Intel* factors did not already
clearly weigh against CPC's Section 1782 application (*but see supra* pp. 21-45),
whether CPC was entitled to the invasive discovery it seeks was at the very least a
close question.  The PTAB's invalidation of the U.S. patent claim corresponding to
the German one that would underly the proceeding for which CPC seeks this
discovery tilts the balance decidedly in Apple's favor.

The circumstances here parallel those this Court confronted in *Khrapunov*.
There, the district court had authorized Section 1782 discovery to aid petitioner
Khrapunov's application to "discharge two court orders issued against him in
ongoing litigation in England."  931 F.3d at 923-24.  After the district court's
decision, "Khrapunov's attempts to discharge the two court orders . . . were denied
by English courts," he was denied "permission to appeal those denials, and at least
one judge found Khrapunov's arguments to be 'totally without merit.'"  *Id.*  This
Court held that these developments in the English litigation required vacatur of

46

district court's Section 1782 order and remand for reconsideration. *Id.* at 925-26. As most relevant here, this Court recognized that even assuming Khrapunov could still satisfy Section 1782's statutory requirements, "[t]he developments in the English litigation [were] relevant to the discretionary factors." *Id.* at 926. "In particular, the English courts' willingness to proceed to judgment without the benefit of the evidence Khrapunov sought, and the courts' treatment of Khrapunov's claims . . . , likely b[ore] on both the 'character of the proceedings underway abroad' and the 'receptivity' of the English courts 'to U.S. federal-court judicial assistance.'" *Id.* (footnote omitted).

The same result is appropriate here. The PTAB's invalidation of CPC's asserted claims in the U.S. patent corresponding to the German patent CPC will press in its prospective infringement suit indicates that its hypothetical German suit lacks merit. Just as in *Khrapunov*, evidence that CPC's German case is meritless "likely bear[s] on both the 'character of the proceedings underway abroad' and the 'receptivity' of" German courts to discovery assistance from a U.S. court: evidence about Apple's biometric security technology is not needed for a suit premised on an invalid patent claim. 931 F.3d at 926. For similar reasons, the PTAB's invalidation also bears on the fourth *Intel* factor, which requires weighing CPC's need for the information it seeks against the burden on Apple and the risks associated with CPC's request. *Supra* pp. 20-27; *see, e.g.*, Fed. R. Civ. P. 26(b)(1) (requiring consideration

of "whether the burden or expense of the proposed discovery outweighs its likely benefit"). If CPC does not even have a valid basis for bringing an infringement claim, obtaining this extremely sensitive information could not help it, and the invasion and burden on Apple is necessarily undue. The district court should be given the opportunity to consider this new development and determine whether CPC's request for discovery could be justified.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed. At the very least, its order should be vacated and the case should be remanded for further proceedings.

Dated: March 4, 2024                    Respectfully submitted,

                                        /s/ James R. Sigel

SETH SPROUL                             JAMES R. SIGEL
FISH & RICHARDSON, PC                   JOEL F. WACKS
12860 El Camino Real, Suite 400         MORRISON & FOERSTER LLP
San Diego, CA 92130                     425 Market Street
                                        San Francisco, CA 94105
                                        Tel: (415) 268-6948
                                        JSigel@mofo.com

*Counsel for Respondent-Appellant Apple Inc.*

48

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-3449

I am the attorney or self-represented party.

**This brief contains** 11,207 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [        ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ James R. Sigel **Date** March 4, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system on March 4, 2024.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.


Dated:  March 4, 2024                        /s/ James R. Sigel
                                             James R. Sigel