No. 23-3449

---

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

**CPC PATENT TECHNOLOGIES PTY LTD.,**

**Petitioner-Appellee,**

**v.**

**APPLE INC.,**

**Respondent-Appellant.**

---

Appeal from the United States District Court for the
Northern District of California, Oakland,
No. 4:21-mc-80091-JST
Judge Jon S. Tigar

---

**ANSWERING BRIEF OF CPC PATENT TECHNOLOGIES PTY LTD.**

---

George C. Summerfield, Michigan SBN P40644
Darlene F. Ghavimi, Texas SBN 24072114
Zachary T. Timm, SBN 316564
Vanuhi Zohrabians, SBN 324274
K&L GATES LLP
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Telephone: 310.552.5000

Attorneys for Appellee CPC PATENT
TECHNOLOGIES PTY LTD.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), petitioner-appellee

CPC Patent Technologies Pty Ltd. ("CPC") states that it has no parent corporation

and no publicly held corporation owns ten percent or more of its stock.


Dated: April 3, 2024                              */s/ George C. Summerfield*
                                                  George C. Summerfield

**TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ...................................................4

ISSUES PRESENTED................................................................7

STATEMENT OF THE CASE........................................................8

SUMMARY OF THE ARGUMENT ................................................9

ARGUMENT ........................................................................12

    A.    Apple's Confidentiality Concerns Are Unfounded...........................12

        1.    Apple Has Failed to Establish the Discovery is Unduly Burdensome ................................................................12

        2.    A Protective Order Is Adequate Protection For Apple's Information................................................................15

        3.    The Availability of Public Information Does Not Preclude Discovery ..............................................................21

    B.    The Remaining Intel Factors .................................................24

        1.    The First Intel Factor ...............................................24

        2.    The Second and Third Intel Factors........................................26

    C.    The Disposition of Co-Pending Proceedings in The United States Are Immaterial to Prospective Litigation in Germany ............28

STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ...........................................................................31

CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 32-1 ...................................................................................32

CERTIFICATE OF SERVICE .....................................................33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) ................................................................9, 17

*Andover Healthcare, Inc. v. 3M Co.*,
   817 F.3d 621 (8th Cir. 2016) ....................................................................15, 17

*In re Application of Procter & Gamble Co.*,
   334 F. Supp.2d 1112 (E.D. Wis. 2004) ......................................................16

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
   978 F.3d 968 (5th Cir. 2020) .......................................................................3

*In re Bayerische Motoren Werke AG*,
   No. 19-mc-80272, 2019 WL 5963234 (N.D. Cal. Nov. 13, 2019)....................26

*CPC Patent Technologies Pty Ltd. v. Apple Inc.*,
   No. 6:21-cv-00165-ADA, Dkt. 89 (W. D. Tex.) ................................................18

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981)..........................................................................................1

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
   308 F.3d 1075 (9th Cir. 2002) .....................................................................25

*Grant v. City of Long Beach*,
   315 F.3d 1081 (9th Cir. 2002), amended by 334 F.3d 795 (9th Cir.
   2003) ...................................................................................................................9

*Harman v. Apfel*,
   211 F.3d 1172 (9th Cir. 2000) .......................................................................9

*Infineon Technologies AG V. Green Power Technologies Ltd.*,
   247 F.R.D. 1 (D.D.C. 2005) ...........................................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)...........................................................................................9

*In re Jenoptik AG*,
    109 F.3d 721 (Fed. Cir. 1997) ...........................................................27

*Khrapunov v. Prosyankin*,
    931 F.3d 922 (9th Cir. 2019) .......................................................1, 26

*Kode v. Carlson*,
    596 F.3d 608 (9th Cir. 2010) ..............................................................9

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Off., Tokyo, Japan*,
    16 F.3d 1016 (9th Cir. 1994) ..............................................................1

*Li v. Eddy*,
    324 F.3d 1109 (9th Cir. 2003) ..........................................................20

*Maxell, Ltd. v. Apple Inc.*,
    5:19-CV-00036, 2021 WL 3012355at (E.D. Tex. Jan. 27, 2021) .....................13

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
    637 F.3d 939 (9th Cir. 2011) ..............................................................9

*Medtronic, Inc. v. Daig Corp.*,
    789 F.2d 903 (Fed. Cir. 1986) ..........................................................26

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
    634 F.3d 557 (9th Cir. 2011) .......................................................1, 2

*Stein Associates, Inc. v. Heat and Control, Inc.*,
    748 F.2d 653 (Fed. Cir. 1984) ..........................................................26

*Valdivia v. Schwarzenegger*,
    599 F.3d 984 (9th Cir. 2010) ..............................................................9

*Via Vadis Controlling GmbH v. Skype, Inc.*,
    2013 WL 646236 (D. Del. Feb. 21, 2013) ...........................................14

**Statutes**

28 U.S.C. § 1291 ............................................................................1

U.S. Code § 1782 ....................................................................*passim*

2

**Other Authorities**

Cir. R. 28.1-1 ...........................................................................................29

Fed. R. App. P. 32(f) ................................................................................29

Fed. R. Civ. P. 26(b)(1) ...........................................................................19

Ninth Circuit Rule 28-2.6 ........................................................................28

Ninth Circuit Rule 32-1 ...........................................................................29

## JURISDICTIONAL STATEMENT

Apple Inc.'s ("Apple") jurisdictional statement depends upon its characterization of the district court's grant of CPC's 28 U.S. Code § 1782 petition as "a final order appealable under 28 U.S.C. § 1291." (Apple's Opening Brief, Dkt. 8.1 ("Opening Brief") at 1. Generally, "a party may not take an appeal under this section until there has been 'a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

To support the requisite finality, Apple cites two decisions from this Court— *Khrapunov v. Prosyankin*, 931 F.3d 922 (9th Cir. 2019) and *In re Letters Rogatory from Tokyo Dist. Prosecutor's Off., Tokyo, Japan*, 16 F.3d 1016, 1018 n.1 (9th Cir. 1994). In the first case, the entirety of the Court's pronouncement on jurisdiction was that "[w]e have jurisdiction under 28 U.S.C. § 1291." *Khrapunov v. Prosyankin*, 931 F.3d at 924, *citing In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 567 (9th Cir. 2011). In the *840 140th Ave.* case, the Court was asked to address the district court's denial of a protective order in the context of a section 1782 petition. 634 F.3d at 564-65. The Court reasoned that, "[o]nce the district court has ruled on the parties' motions concerning the evidentiary requests, there is no further case or controversy before the district

4

court." *Id.* at 625. By implication, where there are pending motions or prospective motions resulting from the grant of a Section 1782 petition, the grant is non-final and not appealable.

The necessary result is that any prior statement by this Court suggesting that a grant of a Section 1782 petition is ***automatically*** final and appealable could only have been *dicta*. Certainly, in this case, the petition grant was demonstrably ***not*** final. Unlike the appellant in *840 140th Ave.*, Apple did not file a protective order once the district court granted CPC's petition. Rather, Apple propounded objections to each of CPC's 15 document requests, agreeing only to meet and confer on each. (SER-32-51.) Prior to the resolution of these objections below, Apple successfully moved to stay the proceedings below. (Opening Brief at 16). This leaves open the substantial likelihood that, in the event this Court affirms the district court's grant of CPC's Section 1782 petition, the parties will require court intervention once again to resolve the discovery disputes arising from Apple's objections, potentially resulting in yet another visit to this Court.

Again, unlike *840 140th Ave.*, the district court had not "ruled on the parties' motions concerning the evidentiary requests," thereby eliminating "further case or controversy before the district court." 634 F.3d at 565. Rather, this case is more akin to *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.,* where there was a pending motion to quash a subpoena while that grant of a section 1782 petition was

5

on appeal. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.,* 978 F.3d 968, 970 (5th Cir. 2020). Given that pendency, the court determined that there was no appellate jurisdiction, as the petition grant was not a final resolution of the matter below. *See id.* Although *Banca Pueyo* was decided by another circuit court, its reasoning is entirely consistent with the reasoning of this Court's decisions regarding the requisite finality for purposes of appellate jurisdiction. It supports the inescapable conclusion that, given what remains to be done before the district court, the decision that Apple asks this Court to review is not sufficiently final to confer appellate jurisdiction, and this Appeal should be dismissed.

## ISSUES PRESENTED

In addition to the issues for appeal presented by Apple, CPC poses the following issue:

3.     Whether this Court has appellate jurisdiction over this Appeal given the matters left unresolved by the district court's grant of CPC's Section 1782 petition below.

## STATEMENT OF THE CASE

In addition to Apple's statement of the case (Opening Brief at 4-17), CPC adds that, after the district court granted CPC's Section 1782 Petition, after Apple received CPC's subpoena pursuant to said grant, after the parties negotiated a protective order designed to govern the production of documents responsive to said subpoena, Apple propounded objections to each of CPC's 15 document requests, agreeing only meet and confer on each. (SER-32-51.) Prior to the resolution of these objections below, Apple successfully moved to stay the proceedings below. Opening Brief at 16.

## SUMMARY OF THE ARGUMENT

In the proceeding below, petitioner-appellee CPC Patent Technologies Pty Ltd. ("CPC") sought discovery pursuant to 28 U.S.C. § 1782 from respondent-appellant Apple, Inc. ("Apple") narrowly tailored to be "sufficient to show" certain features of Apple products that will be at issue in a patent litigation in Germany contemplated by CPC. The district court, after several efforts to derail the proceeding by Apple, and an earlier appeal to this Court, ordered the discovery produced.

Apple now seeks to disturb the district court's order. There is no dispute on appeal that CPC has satisfied the statutory factors for discovery required by Section 1782. (*See, e.g.,* Apple Opening Brief, Dkt. No. 8.1 ("Opening Brief") at 4). Rather, Apple faults the district court's analysis of four ***discretionary*** factors—factors that a court ***may*** (has the discretion to) consider in ordering discovery under Section 1782. Primarily, Apple argues that the prospect of having to produce highly sensitive information elevates one of these discretionary factors, undue burden, to near paramount status.

In fact, Apple is obscure even as to whether the discovery would require it to produce highly confidential information, and, if so, what that information might be. On the one hand, Apple protests that production of its source code would be particularly problematic. On the other hand, Apple contends that publicly available

information is sufficient to make the showing sought in CPC's discovery requests. Even the district court noted this facial contradiction, to which Apple has no explanation.

Further, and irrespective of any theoretical need to produce highly sensitive information, the parties negotiated a protective order governing the production of Apple's information for use in Germany, which was entered by the district court. Apple sought, and received, protections in that order that were as "expansive as possible," according to Apple itself. (Opening Brief at 24.) Notwithstanding its participation in the negotiation, drafting, and submission of that protective order, Apple still complains that a protective order will be ineffective in protecting its confidential information. Apple provides no possible motive for CPC, which Apple styles as a "patent holding company," to misuse Apple information outside of the United States, nor for the German court to allow public dissemination of information Apple considers confidential. Especially given the discretionary nature of this "undue burden" factor, the district court's decision ordering Section 1782 discovery should not be disturbed.

Apple ignored the other three discretionary factors, upon which it now relies, until very late in these proceedings. Apple never raised two of these factors—receptiveness of German courts to receiving evidence adduced in the United States

10

and whether CPC is using Section 1782 to skirt discovery limits in Germany or the United States—until this Appeal.

Likewise, Apple did not raise the final factor, whether Apple would be a party in the German action, until late in the district court proceedings. Even then, Apple contended without evidence that it ***might*** be a party to the German action, despite CPC's repeated representations (which the district court credited) that it would not. As the district court noted, evidence in the form of affirmative representations outweigh pure conjecture of the type offered by Apple.

The district court offered a well-reasoned and detailed opinion justifying its order of discovery under Section 1782. Apple's bent on appeal is that it simply does not want to produce the subject evidence. Apple's desires, however, do not evidence an abuse of discretion by the district court, the decision of which should not be disturbed on appeal.

# ARGUMENT

The abuse of discretion standard of review requires an appellate court to uphold a district court's determination that falls within a broad range of permissible conclusions. *See Kode v. Carlson*, 596 F.3d 608, 612-13 (9th Cir. 2010) (per curiam); *Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002), amended by 334 F.3d 795 (9th Cir. 2003) (order).

## A. Apple's Confidentiality Concerns Are Unfounded

Apple has failed to show that the district court's decision granting Section 1782 discovery "lies beyond the pale of reasonable justification under the circumstances" warranting reversal. *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000)*; McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 953 (9th Cir. 2011); *Valdivia v. Schwarzenegger,* 599 F.3d 984, 988 (9th Cir. 2010).

### 1. Apple Has Failed to Establish the Discovery is Unduly Burdensome

Apple's main argument on appeal is that the information sought in CPC's Section 1782 petition is too sensitive to be produced, and therefore the district court abused its discretion in permitting CPC such discovery. (Opening Brief at 20-22). This, according to Apple, falls within the fourth *Intel* factor. (*Id.* at 20); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The district court properly noted that the *Intel* factors are "discretionary." (ER-87). Thus, a court need not explicitly address every factor. *See Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,

12

793 F.3d 1108, 1112 (9th Cir. 2015), *citing United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000). This belies Apple's contention that an *Intel* factor somehow "***compels*** the rejection of CPC's attempt" to garner the discovery it seeks. (Opening Brief at 20) (emphasis added.)

Apple's entire argument is based upon an unproven premise–that "[t]here should be little question that the information CPC seeks is extremely sensitive." (Opening Brief at 21). The "evidence" supporting that premise is Apple's attorney argument in a joint discovery letter submitted to the district court by the parties after remand. (*See id.* at 22, *citing* ER-169-70). That letter, in turn, consists merely of attorney argument that "CPC's requests are not run-of-the-mill document requests, but instead requests for crown jewel material." (*See* ER-174).

In point of fact, the requests appended to CPC's Section 1782 petition sought "documents 'sufficient to show' different aspects of" particular Apple devices, "rather than seeking 'all' documents related to such aspects." (*See* ER-194). At no point did Apple provide ***evidence***, *e.g.,* in the form of a knowledgeable declarant, that the "crown jewels" are required to provide the sufficient showing sought by CPC's document requests. In fact, Apple all but recognized that source code production was ***not*** mandated, *per se*, by the subject discovery. (ER-97, *quoting* ER-118) ("CPC agreed not to seek source code ***unless no other responsive information as available***") (emphasis in original.)

13

Further, the purported inevitability of source code production is inconsistent with Apple's argument that ***publicly*** available information would suffice to describe the operation of the subject products. (*See* Opening Brief at 25-27) (describing, *inter alia*, "a 219-page whitepaper published in May 2021 that describes in detail 'the protection and flow of user identity information through Apple products'"); (*see also* ER-166) ("Apple has published various articles outlining its work in facial recognition and touch identification, including a May 2021 report titled 'Apple Platform Security' that 'describes the protection and flow of user identify information through Apple products.'") The district court indeed noted these facially contradictory positions. (*See* ER-91) ("Apple has said both that the information responsive to CPC's subpoena is publicly available and that it is highly confidential").

It defies logic that there is nothing of relevance lying between public information and source code. However, if it is Apple's position that public information is "sufficient to show" the salient operation of its products, it can ratify that position by producing such information in response to the subject requests. If, however, as is likely the case, that such public information is insufficient, then Apple has failed to show the discovery is intrusive and burdensome, and failed to show that the district court abused its discretion in holding otherwise.

Finally, it is worth nothing that this is the second time that the issue of CPC's Section 1782 petition has been before this Court. In the first go-round, this confidentiality concern did not occur to Apple, opting rather to argue only that the subject discovery requests were too numerous and too nebulous to be proper, and that any discovery issues should be resolved in the co-pending U.S. litigation. (*See* SER-22-26; 56.)[1] That Apple neglected to mention confidentiality until after remand in the first appeal is difficult to reconcile with Apple's current contention that its information is simply too confidential to produce. Apple's belated confidentiality concern should not cause the district court's decision to be disturbed.

### 2. A Protective Order Is Adequate Protection For Apple's Information

The district court did not abuse its discretion in finding that a protective order would provide Apple with sufficient safeguards should its confidential information be used in a German proceeding. (*See* ER-88-91). The district court began its detailed analysis by outlining the steps the parties took to fashion a protective order that was acceptable to ***Apple***:

---

[1] While the focus of the first appeal in this matter was the proper standard of review, Apple argued that, irrespective of which standard applied, it should not be compelled to produce the information sought. In other words, Apple argued the merits of CPC's Section 1782 petition. It was in that context that Apple omitted any reference to confidentiality.

(1)    agreeing to a "very restrictive" stipulated protective order; (2) requiring the production of source code only if no other information is available; (3) amending the protective order to include a provision on the production of source code if such production becomes necessary; and (4) seeking permission from Judge Cousins before using any confidential information produced pursuant to the protective order in the German action.

(ER-88-89.)

This process resulted in a protective order that both parties negotiated and submitted to the district court, which the district court entered on February 13, 2023. (ER 18-44.) Given the availability of protective order protections, Apple's protestations regarding the use of its materials in Germany are unfounded. *See Maxell, Ltd. v. Apple Inc.,* 5:19-CV-00036, 2021 WL 3012355at *4 (E.D. Tex. Jan. 27, 2021) (finding a domestic protective order is sufficient to protect the confidentiality of Apple's information used in a German proceeding).

Nonetheless, more than a year later, after the needless expenditure of resources of both the parties and the district court, Apple has yet to produce a single document because this negotiated protective order allegedly fails to provide it with adequate protection. This, combined with Apple's afore-described omission of ***any*** reference to confidentiality in its initial tranche of pleadings, makes clear that its position on confidentiality in the instant Appeal is nothing more than a litigation artifice.

Beyond Apple's appeal strategy, the district court noted that "parties routinely produce source code subject to protective orders in patent infringement

cases." (ER-89). Apple chastises the district court for failing "to account for the differences between the discovery orders in the domestic patent infringement cases the district court cited." (Opening Brief at 28). However, as the district court noted, "[j]ust as 'there is no source[]code exception to the production requirements of the Federal Rules' of Civil Procedure, neither is there a source code exception to Section 1782." (ER-90) (internal citation omitted). And, as noted above, the negotiated protective order contains lengthy, specific provisions directed to the treatment of source code, assuming production thereof is indeed necessary. (*See* ER 18-44).

The district court also observed that, in the contrary decision cited by Apple*, Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236 (D. Del. Feb. 21, 2013), the "court denied petitioner's Section 1782 petition on a number of additional grounds," including that discovery could be taken directly from one of the defendants in the foreign litigation. (ER-89-90). Further, the district court made clear that, "if the *Via Vadis* court meant to express a bright-line rule that a court can never order production of source code in response to a Section 1782 petition, the Court disagrees with that holding, which is unsupported by authority and at odds with the practical realities of international patent litigation." (ER-90). Indeed, a "bright-line rule" on this issue would be inconsistent with the discretionary nature of the *Intel* factors.

17

In reiterating its concerns that a protective order will be insufficient to protect its confidential information, Apple cites the Eighth Circuit's decision in *Andover Healthcare, Inc. v. 3M Co*., 817 F.3d 621, 623-24 (8th Cir. 2016). (Opening Brief at 23). As with the decision in *Via Vadis*, at least one other factor weighed against granting the subject Section 1782 petition–the party from which discovery was sought was also a party in the German litigation and could be ordered to produce the subject discovery in that matter. *Andover Healthcare, Inc. v. 3M Co*., 817 F.3d at 623 ("It was reasonable on this record for the district court to presume that the German court will examine first whether the case can be resolved without compelling discovery of sensitive trade secrets but will exercise jurisdiction to order disclosure if the information is essential to making an informed decision").

Further, while the moving party in *Andover Healthcare* had referenced a hypothetical protective order (*see id.* at 624), there was nothing akin to the negotiated protective order in already place in this matter. As Apple itself notes, "Apple has done everything it can to assure that the U.S. protective order entered in this case is **as expansive as possible**." (Opening Brief at 24) (emphasis added). Nonetheless, Apple is requiring something that no court could possibly guarantee–that its confidential information, once produced, will not be disclosed to unauthorized parties. Either through inadvertence or through nefarious intent,

18

unauthorized disclosure can occur irrespective of the protective order in place, although CPC does not anticipate that such disclosure will occur. Nonetheless, as the district court noted, "parties routinely produce source code subject to protective orders in patent infringement cases." (ER-89). There is no justification for deviating from that routine in this case, given the protective order already in place.

Apple contends that a "German court could allow for disclosure of these materials regardless of any obligations a U.S. protective order might impose on CPC and Apple." (Opening Brief at 29). However, German courts have "a procedure to keep certain documents confidential." *Infineon Technologies AG V. Green Power Technologies Ltd.*, 247 F.R.D. 1, 3 (D.D.C. 2005). Further, a similar argument was rejected in *In re Application of Procter & Gamble Co.*, where the court found that it possessed "sufficient tools to ensure that confidential discovery material is not publicly disclosed" via a German litigation as long as it "retain[ed] jurisdiction of the matter for the purpose of enforcing the confidentiality agreement." *In re Application of Procter & Gamble Co.*, 334 F. Supp.2d 1112, 1117 (E.D. Wis. 2004).

As an aside, Apple bemoans that there is "no obvious mechanism for the district court to sanction CPC's misuse—intentional or inadvertent—of Apple's confidential information." (Opening Brief at 25). The district court specifically noted that it "has jurisdiction over CPC and Apple, and as signatories to the

protective order, they are bound by its terms."  (ER-90) (citing *Palantir Techs., Inc.*, 415 F. Supp. 3d at 917 ("The protective order binds [the parties], both of whom are clearly subject to this Court's jurisdiction. Whether the German Court approves of the restrictions placed on the parties is irrelevant.") and *Akebia Therapeutics, Inc. v. FibroGen, Inc.,* 793 F.3d 1108, 1112 (9th Cir. 2015) (rejecting an argument that a Section 1782 application was unduly burdensome because the court "entered a restrictive protective order to guard against disclosure").

Regardless, Apple fails to identify why or to whom CPC would misuse the subject information.  Apple admits that CPC is not a competitor, but rather a "patent holding company." (Opening Brief at 5). This is contrasted with the situation in *Andover*, where both parties competed in the manufacture of cohesive latex-free bandages. *Andover*, 817 F.3d at 622. There can be no corresponding concern on Apple's part regarding the potential misuse of its confidential information by CPC– a non-competitor.

Relatedly, Apple suggests that CPC is using its section 1782 petition as "a stalking horse to attack a protective order issued in another matter," *i.e.,* the co-pending U.S. litigation, which "prohibits CPC from using the evidence it seeks." (Opening Brief at 30). Again, Apple identifies no motivation for CPC to engage in

nefarious behavior.[2]  Rather, CPC seeks discovery under Section 1782 pursuant to its proper purpose: to allow discovery for use in a foreign litigation that would otherwise be unavailable for such use.  Further, the district court cited the decision in *Four Pillars Enters. Co. v. Avery Dennison Corp*., where this Court noted that "there is no 'rigid rule that a protective order of its own force precludes subsequent discovery under §1782.'"  (ER-92, n.2, *citing Four Pillars Enters. Co. v. Avery Dennison Corp*., 308 F.3d 1075, 1078-79 (9th Cir. 2002)). In contrast to this proceeding, the party seeking Section 1782 discovery in *Four Pillars* "had been convicted of theft of trade secrets in that litigation," justifying denial of the petition in that case. *See id.*

### 3. The Availability of Public Information Does Not Preclude Discovery

After protesting at length regarding the risks associated with the production of its confidential information, Apple devotes an entire section of its appeal brief to the proposition that the requested information is publicly available. (Opening Brief at 25-27). Apple notes that CPC has filed a motion for summary judgment in the co-pending patent litigation in the United States. (*Id*. at 26.) However, Apple has

---

[2] Apple casts aspersion on CPC and its counsel by implying that CPC violated the protective order in the U.S. patent litigation. This alleged "violation" was simply an acknowledgment by CPC that Apple may have already produced relevant documents in that case. The fact of such production was already public knowledge. *See, e.g., CPC Patent Technologies Pty Ltd. v. Apple Inc.*, No. 6:21-cv-00165-ADA, Dkt. 89 (W. D. Tex.).

not conceded that the evidence underlying that summary judgment motion proves infringement. In fact, in its own motion to dismiss the complaint in that action, Apple argued that "the evidence CPC points to for the fingerprint scanner for Touch ID is equally silent as to" various limitations of the asserted claims, *i.e.* the information is insufficient to show infringement. *See CPC Patent Technologies Pty Ltd. v. Apple Inc.*, 6:21-cv-00165-ADA, U.S.D.C Western District of Texas, Dkt. 23 at page 18.) In fact, only Apple knows what evidence is "sufficient to show" the product features identified in CPC's discovery requests. Yet, Apple has urged two diametrically opposed propositions regarding that evidence–highly confidential information is necessary to make the requested "sufficient" showing, while public information is also sufficient for such showing. Both cannot be true. However, irrespective of Apple's dichotomous positions, unless Apple is willing to concede that the public information it references is sufficient to establish infringement, CPC is entitled to additional discovery in Apple's possession– confidential or not–to support its infringement claim.

Relatedly, Apple cites to the "proportional to the needs of the case" language of Fed. R. Civ. P. 26(b)(1). The district court addressed proportionality, finding that "some of the information requested by CPC is not publicly available or accessible to CPC," as Apple itself argued, and "many of the responsive documents likely have already been produced in the United States Action." (ER-91-92). As to the

22

second finding, Apple states that "there is no basis for presuming that CPC needs the same information to file its putative German lawsuit that it secured in the U.S. patent litigation." (Opening Brief at 32). However, Apple's *entire* premise for pointing to publicly available information is that whatever was sufficient to prove infringement in the United States would be sufficient to prove infringement in Germany. (*See id.* at 25-27). A corollary to that proposition is that whatever is proportional to the needs of the case in the United States would also be so for a case pending in Germany.

On a final note, Apple's positions, if accepted, would eviscerate Section 1782. A party opposing Section 1782 discovery need merely maintain that confidential information should not be produced pursuant to that statute, or that public information makes confidential information unnecessary. Such party need not even urge both positions at once, as Apple has done. Either, according to Apple, is sufficient to avoid such discovery. Should a court interpret Section 1782 as allowing a party to avoid discovery when either contingency is true, such interpretation would improperly eviscerate that statute. *See Li v. Eddy*, 324 F.3d 1109, 1110 (9th Cir. 2003), *citing Beck v. Prupis,* 529 U.S. 494, 506 (2000) (it is a "canon of construction that courts interpret statutes so as not to render any section meaningless").

B.    The Remaining *Intel* Factors

    1.    The First *Intel* Factor

Inexplicably, and despite CPC'S repeated representations to the contrary, the Magistrate mused on remand after the first appeal that "Apple ***would*** be a participant to the potential German litigation and could be ordered to produce discovery through that proceeding." (ER-165, n.1) (emphasis added). Thus, according to the Magistrate, the first *Intel* factor–whether Apple would be a participant in the potential foreign proceeding–weighed against Section 1782 discovery. (*Id.*) The Magistrate also noted that Apple had not contested the first *Intel* factor. (*See id.*)

In objecting to the Magistrate's Report and Recommendation, CPC pointed out the several times it had represented to the district court that Apple would ***not*** be a party to any German proceeding. (ER-116). CPC also explained that Apple could not otherwise be ordered to produce evidence in such a proceeding. (ER-116-117). In sustaining CPC's objection to the Report and Recommendation and finding that this first factor weighed in favor of granting CPC's petition, the district court noted that "CPC has repeatedly indicated that it would file the German action against Apple Retail Germany and not against Apple." (ER-87). The district court was also cognizant of Apple's hypothesis that "it ***could*** be a party in the German proceeding because CPC has yet to file a lawsuit against any party," which the district court

characterized as "pure speculation. (*Id.*) (emphasis added). The district court then noted that CPC's representations regarding this factor were "the only ***evidence*** in front of the Court."[3] (*Id.*) (emphasis added).

Apple begins its discussion of the first *Intel* factor on appeal by complaining that the burden should not be on it. (Opening Brief at 33-38). As explained above, it was not. Rather, CPC presented evidence that Apple would not be a party to the German action, and Apple presented only mere speculation that it ***might*** be. Notably, not even Apple urged the Magistrate's finding that it ***would*** be a participant in such an action. In any event, evidence versus speculation means that CPC has met its burden. Further, Apple does not offer a reason why CPC would seek to add Apple as a party to a German litigation.

Otherwise, Apple simply repeats its assertion that CPC does not actually "need" the information sought, which is unrelated to whether Apple would be a party to a German proceeding. (*See* Opening Brief at 38-39). CPC addressed the need for the subject information above, with respect to the fourth *Intel* factor. There is no basis to disturb the district court's finding regarding this ***discretionary*** factor.

---

[3] There was not an "absence of evidence," as Apple contends. (*See* Opening Brief at 37).

### 2. The Second and Third *Intel* Factors

In its initial petition, CPC discussed each of the statutory and discretionary *Intel* factors underlying section 1782, including the second and third *Intel* factors. (ER-192-94). When it sought review of the Magistrate's denial of its petition, CPC again discussed each such factor. (SER-61-63.) In opposing such review, after discussing the proper standard of review, Apple only addressed the fourth *Intel* factors (the sole factor upon which the Magistrate based his denial), opting not to address the remaining factors at all, despite CPC having reiterated them. (*See* SER-55-56.)

On remand, the Magistrate addressed all four of the *Intel* factors, characterizing the first three factors as "neutral." (ER-165). In actuality, two of the three factors favored granting CPC's Section 1782 petition, according to the Magistrate's findings thereon:

> (2) German courts are generally receptive to U.S. federal court judicial assistance; and (3) Apple does not assert that CPC's request is an attempt to circumvent foreign proof-gathering restrictions.

(ER-165).

In objecting to the Magistrate's Report and Recommendation, CPC reiterated that the second and third *Intel* factors supported granting CPC's Section

26

1782 petition.[4] (ER-117, n.9). The district court confirmed such support, noting first that "[m]any other courts . . . have held that Germany is receptive to judicial assistance from a federal court." (ER-88) (citations omitted). The district court also found no evidence that "CPC is attempting to circumvent German proof-gathering restriction." (*Id.*)

On appeal, Apple references what it **could have** argued, had it thought to do so. (*See* Opening Brief at 39-45). Couched in terms of "the principle of party presentation," Apple relies on two inaccurate statements by the district court: 1) the Magistrate's characterization of the second and third *Intel* factors as neutral, when they in fact supported granting CPC's petition; and 2) the district court's statement that neither party had addressed these factors. (Opening Brief at 39). A thorough reading of the subject decisions renders Apple's "principle of party presentation" theory specious.

By way of example, as to the second *Intel* factor, the Magistrate found that "German courts are generally receptive to U.S. federal court judicial assistance." (ER-165). Apple argues on appeal that it "could have pointed out that some other courts have found that Germany was **not** receptive to U.S. judicial assistance." (Opening Brief at 42-43) (emphasis in original). Apple could have and **should** have

---

[4] In sustaining CPC's objection to the Magistrate's Report and Recommendation, the district court erroneously stated that neither party addressed the second and third *Intel* factors when, in fact, only Apple failed to address these factors. (ER-88).

raised this issue during the district court's review of the Magistrate's Report and Recommendation, if it disagreed with the Magistrate's finding. Apple did not, and its belated attempt to do so cannot be countenanced, even under the "principle of party presentation."

Regarding the third *Intel* factor, the Magistrate noted that "Apple does not assert that CPC's request is an attempt to circumvent foreign proof-gathering restrictions." (ER-165). Again, in opposing review of the Report and Recommendation, if Apple were asserting such attempted circumvention, it could have said so during the review thereof. It did not, and only on appeal does Apple now argue that it "could have explained that CPC's Section 1782 petition does circumvent a policy of the United States." (Opening Brief at 43). This explanation comes too late and is also inconsistent with this Court's precedent noting that a U.S. protective order does not necessarily preclude subsequent discovery under § 1782. *See Four Pillars,* 308 F.3d at 1078-79.

Simply put, Apple cannot now interject arguments regarding these two discretionary factors that it failed to make before the district court. The district court's decision on these factors should not be disturbed.

### C. The Disposition of Co-Pending Proceedings in The United States Are Immaterial to Prospective Litigation in Germany

Finally, Apple seeks remand of this matter in the event it is unsuccessful in urging error on the part of the district court so that the district court can address

"significant developments" regarding the U.S. counterpart patent before the U.S. Patent and Trademark Office. (*See* Opening Brief at 45-48). These developments are irrelevant.

The Federal Circuit has noted the irrelevance of patent determinations in one country to proceedings in another country. *See e.g., Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 908 (Fed. Cir. 1986) (German tribunal's decision not binding on patent determination by United States federal court); *Stein Associates, Inc. v. Heat and Control, Inc.,* 748 F.2d 653, 658 (Fed. Cir. 1984) (decision in United States not binding on British proceeding, and vice versa). The sole case cited by Apple–*Khrapunov v. Prosyankin,* 931 F.3d 922, 924 (9th Cir. 2019)–is inapposite. There, developments in an **English** litigation warranted *vacatur* of a Section 1782 order for evidence to be used in that litigation. (*See* Opening Brief at 46-47). *Khrapunov* would be analogous only if the developments which Apple invokes occurred in Germany, which is not the case.

CPC's German patents are valid and enforceable, and Apple does not point to anything to show the contrary. Moreover, in Germany, while an infringement action is brought in a Regional Court, a nullity action seeking to invalidate a patent is brought in a separate proceeding before the Germany Federal Patent Court. *See In re Bayerische Motoren Werke AG,* No. 19-mc-80272, 2019 WL 5963234 (N.D. Cal. Nov. 13, 2019). In other words, the Apple defendants in a German action,

were they intent on challenging the validity of CPC's German counterpart patent, would not be able to do so in the same infringement proceeding brought by CPC. As an aside, no Apple entity has initiated a nullity action in Germany based upon the art cited in the subject *inter partes* review (or any other art). Apple also refers to the "receptivity" of German courts as allegedly warranting further review by the district court. (Opening Brief at 47). "Receptivity" presumably incorporates a notion of relevance. But, even if a German court would be receptive to receiving evidence of U.S. proceedings, the appropriate course would be for Apple to present evidence of those proceedings in Germany. *See In re Jenoptik AG,* 109 F.3d 721, 724 (Fed. Cir. 1997) ("Jenoptik did not show why the German court could not decide this issue as well as any other issues relating to the material, including admissibility, that the German court deemed appropriate"). Remand is therefore inappropriate.

## STATEMENT OF RELATED CASES

## PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case No. 23-3449**

I am the attorney for Petitioner-Appellee CPC Patent Technologies Pty LTD.

I am unaware of any related cases currently pending in this court.


Dated: April 3, 2024                    By:    */s/ George C. Summerfield*
                                               George C. Summerfield

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO CIRCUIT RULE 32-1

**9th Cir. Case No. 23-3449**

I am the attorney for Petitioner-Appellee CPC Patent Technologies Pty LTD. This brief contains 5,658 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. Appl. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 28.1-1.

Dated: April 3, 2024                    By:    */s/ George C. Summerfield*
                                               George C. Summerfield

## CERTIFICATE OF SERVICE

**9th Cir. Case No. 23-3449**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system. All participants in this matter are active CM/ECF users.

Executed on April 3, 2024 in Chicago, Illinois.

By: */s/ George C. Summerfield*
   George C. Summerfield
   Petitioner-Appellee CPC Patent
   Technologies Pty LTD