No. 23-3449

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CPC PATENT TECHNOLOGIES PTY LTD.,

*Petitioner-Appellee,*

v.

APPLE INC.

*Respondent-Appellant.*

---

Appeal from the United States District Court for the
Northern District of California, Oakland,
No. 4:21-mc-80091-JST, Judge Jon S. Tigar.

---

## APPLE INC.'S REPLY BRIEF

---

SETH SPROUL
FISH & RICHARDSON, PC
12860 El Camino Real
Suite 400
San Diego, CA 92130
Telephone: (858) 678-4343
Email: sproul@fr.com

JAMES R. SIGEL
DAVIS WRIGHT TREMAINE LLP
50 California Street
23rd Floor
San Francisco, CA 94111-4701
Telephone: (415) 276-4850
Email: jamessigel@dwt.com

*Counsel for Respondent-Appellant Apple Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................1

ARGUMENT.............................................................................................2

I.     THIS COURT HAS APPELLATE JURISDICTION OVER
ORDERS GRANTING SECTION 1782 APPLICATIONS................2

II.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
GRANTING CPC'S SECTION 1782 APPLICATION.......................8

     A.    CPC's Request Is Unduly Intrusive And Burdensome..............8

          1.    CPC provides no basis to disregard the district
court's conclusion that the requested Apple
information is highly sensitive .......................................9

          2.    CPC cannot defend the district court's assumption
that a U.S. protective order eliminates any
confidentiality concerns................................................13

          3.    CPC cannot show the requisite need for the
requested information ....................................................19

     B.    The Remaining *Intel* Factors Do Not Support CPC ................23

          1.    CPC's assertions that it will sue Apple's affiliate
do not support its discovery request ..............................23

          2.    CPC's attempt to justify the district court's
resolution of the second and third *Intel* factors
contradicts the court's findings.....................................25

III.   IN THE ALTERNATIVE, VACATUR AND REMAND IS
WARRANTED GIVEN SUBSEQUENT DEVELOPMENTS.........29

CONCLUSION............................................................................................32

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) ................................................................4, 6

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   No. 3:14-mc-80294, Dkt. 66 (N.D. Cal. Sept. 18, 2015) ..........................6

*Andover Healthcare, Inc. v. 3M Co.*,
   817 F.3d 621 (8th Cir. 2016) ................................................14, 15, 16, 17

*Apple Inc. v. CPC Pat. Techs. PTY, Ltd.*,
   No. IPR2022-00602, 2023 WL 6617490 (PTAB Sept. 27, 2023) ...........30

*Arroyo v. Rosas*,
   19 F.4th 1202 (9th Cir. 2021) ..................................................................10

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
   978 F.3d 968 (5th Cir. 2020) ....................................................................7

*Baxalta Inc. v. Genentech, Inc.*,
   No. 16-mc-80087, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) ..........14

*California v. IntelliGender, LLC*,
   771 F.3d 1169 (9th Cir. 2014) ................................................................23

*Conservation Nw. v. Sherman*,
   715 F.3d 1181 (9th Cir. 2013) ................................................................26

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ............................................................3, 5, 6

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
   308 F.3d 1075 (9th Cir. 2002) ................................................................11

*Hilao v. Estate of Marcos*,
   103 F.3d 767 (9th Cir. 1996) ..................................................................26

*In re Application of Procter & Gamble Co.*,
   334 F. Supp. 2d 1112 (E.D. Wis. 2004) ..........................................16, 17

*In re Application Pursuant to 28 U.S.C. § 1782 to Take Discovery of ASML U.S., Inc.*, 707 F. App'x 476 (9th Cir. 2017) ...............................4, 6

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016 (9th Cir. 1994) ..........................................................3

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557 (9th Cir. 2011) ...................................................................3, 4

*Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1 (D.D.C. 2005) .......................................................................17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..............................................................................*passim*

*Khrapunov v. Prosyankin*, 931 F.3d 922 (9th Cir. 2019) ...............................................4, 29, 30, 31, 32

*Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036, 2021 WL 3012355 (E.D. Tex. Jan. 27, 2021)........17

*Nikon Corp. v. ASML US Inc.*, No. 2:17-mc-00035, Dkt. 31 (D. Ariz. Sept. 22, 2017) ...........................6

*Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907 (N.D. Cal. 2019) .....................................................17

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) ........................................................................................10

*Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143 (9th Cir. 2000) ......................................................................5

*Thompson v. Runnels*, 705 F.3d 1089 (9th Cir. 2013) ....................................................................25

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ........................................................................................25

*United States v. Wilson*, 8 F.4th 970 (9th Cir. 2021) .........................................................................24

iii

*Via Vadis Controlling GmbH v. Skype, Inc.*,
    No. CIV. A. 12-MC-193, 2013 WL 646236 (D. Del. Feb. 21,
    2013) ................................................................................12

*ZF Automotive US Inc. v. Luxshare, Ltd.*,
    569 U.S. 619 (2022) .........................................................4

**Other Authorities**

*CPC Pat. Techs. PTY Ltd. v. Apple Inc.*,
    No. 5:22-cv-02553-EJD, ECF No. 89 (N.D. Cal. Apr. 13, 2022)............20

**Statutes**

28 U.S.C.
    § 1291 .............................................................................3, 5
    § 1782 .......................................................................*passim*

## INTRODUCTION

CPC's answering brief confirms the district court erred in granting CPC's extraordinary request to export some of Apple's most confidential information for use in a yet-to-be-filed German lawsuit. As Apple previously detailed, in concluding CPC's Section 1782 request was not unduly burdensome and invasive, the district court overlooked the risk to Apple's confidential information and CPC's failure to demonstrate any need for it. If that were not enough, the court also committed multiple additional legal errors—mistakenly putting the burden of proof on Apple, erroneously deeming relevant CPC's assertions that it planned to sue Apple's affiliate, and improperly resolving significant issues the parties never briefed. Each of these errors independently warrants reversal.

CPC cannot defend any of the district court's errors, much less all of them. Most significantly, CPC still cannot explain how a U.S. protective order could adequately secure Apple's highly confidential information given a U.S. court's lack of jurisdiction to control a German court (and the third parties that might access this information in Germany), or to meaningfully sanction CPC for any potential violation. CPC also again provides no basis for asserting it needs this confidential information simply to initiate its German proceeding, particularly given its reliance on *public* information in its parallel U.S.

infringement suit. And CPC has no viable justification for the court's conclusion that CPC's unsupported assertions about the defendant in its potential German suit weighed in CPC's favor, or for the court's decision to reach issues it expressly acknowledged the parties had not addressed.

Ironically, much of CPC's brief is devoted to contending that the district court erred in ultimately *agreeing* with CPC. CPC asserts the court was wrong to find that CPC's Section 1782 application would require producing highly confidential information, wrong to find that CPC had not addressed the second and third *Intel* factors, and wrong to conclude that the order granting CPC's application was final and appealable. Even if CPC were correct—and it is not—none of these alternative rationales could provide a basis for affirming the district court's discretionary determination. Nor can CPC evade reversal by attempting to devise a newfound exception to this Court's appellate jurisdiction that contradicts this Court's precedent.

The district court's order should be reversed.

## ARGUMENT

## I. THIS COURT HAS APPELLATE JURISDICTION OVER ORDERS GRANTING SECTION 1782 APPLICATIONS

CPC's attempt to question this Court's jurisdiction lacks merit. This Court has long held that a "district court's orders made pursuant to § 1782 are final, and thus appealable under 28 U.S.C. § 1291." *In re Letters Rogatory*

*from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1018 n.1 (9th Cir. 1994). Most federal courts of appeals recognize "that they have appellate jurisdiction over orders issued under § 1782 without qualification or exception." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 566 (9th Cir. 2011). The Ninth Circuit has carved out one "narrow exception" to that "general rule": cases where the Section 1782 respondent is already a litigant in the foreign proceeding. *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 806 (9th Cir. 2022). That lone exception is not applicable here—and CPC does not contend otherwise.

Instead, CPC hopes to devise a new, much broader, exception: cases in which the district court has granted a Section 1782 application and authorized the petitioner to serve its requested subpoena, but has not denied a subsequent motion to quash that subpoena. *See* Answering Br. 4-5. CPC derives that purported exception from *840 140th Ave.* There, to be sure, the district court had denied the appealing party's motion to quash. *840 140th Ave.*, 634 F.3d at 562.[1] But this Court did not hold or suggest that a Section 1782 order is

---

[1] CPC's references to a "protective order" (Answering Br. 5) may generate confusion. At Apple's urging, the district court entered a "protective order" covering any discovery Apple might produce. *See* ER-18-44. In *840 140th Ave.*, by contrast, the Section 1782 respondents moved for a "protective order" that would relieve them of "any obligation to produce documents" at all—which both the district court and this Court treated as a motion to quash the subpoena issued under Section 1782. 634

3

final and appealable *only* in such circumstances. *See id.* at 565-67. Rather, this Court simply explained that, unlike in a criminal case, the party subpoenaed in a Section 1782 action need not "subject[] himself or herself to contempt sanctions" in order to appeal. *Id.* at 566. As this Court reasoned, while "the district court's order enforcing a subpoena is but one step toward the ultimate resolution of the underlying criminal case," the only "case or controversy" before the district court in a Section 1782 proceeding is the petitioner's discovery request. *Id.*

Because that same rationale applies where, as here, a party appeals an order granting a petitioner's Section 1782 application, this Court has routinely exercised jurisdiction over such appeals. *See, e.g., Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015); *In re Application Pursuant to 28 U.S.C. § 1782 to Take Discovery of ASML U.S., Inc.*, 707 F. App'x 476, 477 (9th Cir. 2017); *see also ZF Automotive US Inc. v. Luxshare, Ltd.*, 569 U.S. 619, 624-26 (2022) (reviewing decisions stemming from both the denial of motion to quash and an order granting Section 1782 application).

---

F.3d at 565-67.

CPC tries to dismiss such decisions as "*dicta*." Answering Br. 5. But when *Khrapunov*, for example, declared the Court had "jurisdiction under 28 U.S.C. § 1291" to review an order "grant[ing] the application under § 1782" (931 F.3d at 924), that was plainly a holding: resolution of this jurisdictional question was a necessary predicate for considering the merits of the district court's order. *Id.* at 925-26; *see Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1154 n.8 (9th Cir. 2000) ("A supporting ground for a holding in a case cannot be fairly cast as dicta.") (quotation marks, brackets and citation omitted).

This Court has also expressly rejected the substance of CPC's arguments. CPC contends that an order granting a Section 1782 application is not sufficiently "final" because there may be further litigation, via a motion to quash or to compel, about the precise scope of discovery. *See* Answering Br. 5. But in CPC's prior appeal, this Court considered and rejected a nearly identical argument—that a Section 1782 order is not a dispositive matter "because there may still be other issues for the court to rule on," such as "the proper scope of the subpoena's requests." *CPC*, 34 F.4th at 809 (quotation marks omitted). This Court reasoned that "the prospect of additional litigation . . . if, for example, the subpoenaed party fails to comply with the court's order . . . exists in virtually all cases, even after the entry of a final judgment." *Id.*

at 809-10. Accepting CPC's contentions (which it now apparently disavows), the Court explained that in the Section 1782 context, such proceedings "are just incidental to the underlying discovery order," comparable "to post-judgment proceedings in an ordinary civil case, such as a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60, or a Rule 59(e) motion to alter or amend a judgment." *Id.* at 809.

Consistent with that reasoning, this Court has exercised jurisdiction over appeals from orders granting Section 1782 petitions notwithstanding the existence of subsequent discovery disputes. *Compare Akebia*, 793 F.3d at 1109-10 (exercising jurisdiction), *with Akebia Therapeutics, Inc. v. FibroGen, Inc.*, No. 3:14-mc-80294, Dkt. 66 at 2 (N.D. Cal. Sept. 18, 2015) (status report acknowledging remaining disputes on scope of production and stating parties might bring those disputes "to the Court's attention"); *compare ASML*, 707 F. App'x at 476-77 (exercising jurisdiction), *with Nikon Corp. v. ASML US Inc.*, No. 2:17-mc-00035, Dkt. 31 (D. Ariz. Sept. 22, 2017) (Joint Proposed Document Production Schedule explaining "[t]he parties are unable to agree on a production schedule").

The sole case CPC cites for its contrary argument is an out-of-circuit decision applying an "outlier" standard. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968, 972-73 n.3 (5th Cir. 2020). Even if *Banca* could

6

be reconciled with the settled Ninth Circuit precedent discussed above, it would be inapposite here. In *Banca*, after the district court granted a Section 1782 petition *ex parte*, the respondents filed a motion to quash. *Id.* at 971. The magistrate judge denied that motion because "respondents had not identified specific discovery requests that were overly burdensome." *Id.* But the magistrate judge expressly "invited them to file a second motion to quash with any objections that remained after the parties conferred." *Id.* The respondents then appealed while also filing a second motion to quash. *Id.* While the appeal was pending, the magistrate judge issued a 52-page order granting the motion to quash in large part. *Id.* In those unique circumstances, the Fifth Circuit held the initial orders were not sufficiently final for appeal because they had "not conclusively determine[d] whether, and to what extent, discovery might be required." *Id.* at 973.

The facts here are readily distinguishable. The district court has done nothing to indicate that its order granting CPC's petition is not conclusive of CPC's entitlement to discovery. In fact, the court rejected any such argument in staying that order pending Apple's appeal. *See* ER-6-7. While Apple reserves the right to raise specific issues that might arise over the course of production, the potential for such incidental discovery disputes does not deprive the district court's order of finality. *See supra* pp. 5-6.

7

In arguing otherwise, CPC relies entirely on Apple's response to CPC's subpoena. Answering Br. 5. There, however, Apple simply stated its intention to appeal the Section 1782 order and reiterated the objections it had raised. *See, e.g.*, SER-34-35. That Apple continues to disagree with the district court's ruling and seeks review in this Court by no means suggests that Apple can or will relitigate in a motion to quash the issues the district court resolved in granting CPC's Section 1782 application. Requiring such repetitive, pointless litigation as a condition precedent to Apple's appeal would only further delay the ultimate resolution of this case.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING CPC'S SECTION 1782 APPLICATION

### A. CPC's Request Is Unduly Intrusive And Burdensome

CPC's opposition offers no viable defense for the district court's erroneous determination that CPC's requests are not unduly intrusive and burdensome under *Intel*'s fourth factor. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). That source code may sometimes be produced in discovery, or that protective orders may sometimes adequately protect confidential information, does not mean that CPC is entitled to the particular discovery it seeks here—as the district court erroneously concluded. ER-90. Rather, as Apple has explained (Opening Br. 20-32), the particular circumstances must be accounted for. CPC seeks highly confidential

information concerning the biometric security measures that secure personal information contained on millions of users' devices. That information cannot be adequately secured by a U.S. protective order given German procedures and CPC's lack of U.S. assets. And CPC does not even show any need for this information. Because the potential harm to Apple (and potentially even users of Apple devices) far outstrips any demonstrated benefit to CPC, this *Intel* factor weighs decisively against CPC's request.

> **1.      CPC provides no basis to disregard the district court's conclusion that the requested Apple information is highly sensitive**

CPC first attempts to deny that the information it seeks in this action is sensitive. It claims Apple is wrong to contend it may need to produce source code and other highly confidential information underlying Apple's biometric security technology. Answering Br. 12-15.

CPC overlooks a critical point: the district court *accepted* Apple's contentions. ER-89-90. The district court never found that CPC's subpoena would not require the production of highly confidential information—its reversable errors lie elsewhere. Instead, the court found that CPC's "subpoena requesting the production of highly confidential [documents] does not make it unduly intrusive or burdensome" because "parties routinely produce source code subject to protective orders in patent infringement cases"—which the

court supported with a citation to discovery orders in *domestic* litigation. ER-89.

CPC now argues, in effect, that while the district court was mistaken in determining that Apple would be required to produce such sensitive information, the court's ultimate conclusion was nevertheless correct. *See* Answering Br. 12-15. But where, as here, the district court has exercised its discretion, this Court "cannot uphold the district court's decision based on discretionary grounds it did not invoke." *Arroyo v. Rosas*, 19 F.4th 1202, 1210 n.4 (9th Cir. 2021). At most, the possibility that the district court might determine that CPC's subpoena does not require the production of highly confidential information would be a reason to vacate and remand for the court to exercise its discretion. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). It is not a basis for this Court to affirm.

Furthermore, CPC's basic argument in seeking discovery under Section 1782 contradicts its present contention that its subpoena would not require production of extremely sensitive information. Indeed, CPC has made clear that the purpose of its Section 1782 action is to circumvent the existing protective order in the U.S. patent litigation between CPC and Apple, which prohibits CPC from using the disclosed information in a hypothetical German lawsuit (or any other litigation). *See* ER-169-170; ER-131. CPC has

10

maintained that in response to the Section 1782 action, "Apple could simply reproduce" documents previously produced in the U.S. patent action, arguing that while "Apple objected to producing its source code in this [Section 1782] action," Apple had "made its source code available for review in the patent infringement action pending between the Parties." ER-170. Although CPC pledged "that it would not seek Apple's source code, unless no other responsive information was available" (ER-170), it offered no basis for questioning Apple's assertion that CPC's requests implicated Apple's source code, just as they had in the U.S. patent litigation. *E.g.*, ER-97.[2]

CPC now attempts to minimize this significant context by contending there is no "rigid rule that a protective order of its own force precludes subsequent discovery under §1782." Answering Br. 21 (quoting *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078-79 (9th Cir. 2002)). But at the very least, that a Section 1782 request seeks disclosures otherwise prohibited by an existing protective order demonstrates the sensitivity of the information sought. *See, e.g.*, *Via Vadis Controlling GmbH*

---

[2] To the extent that CPC complains that Apple submitted no separate declaration confirming this inference (Answering Br. 13), CPC does not explain why the confidentiality of the requested information was not apparent from the judicially noticeable litigation history. In any event, CPC concedes that it bore the burden of proving the *Intel* factors weighed in its favor. *Infra* p. 23; *see* Opening Br. 33-37.

11

*v. Skype, Inc.*, No. CIV. A. 12-MC-193, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013).

Equally mistaken is CPC's contention that Apple is being inconsistent in arguing both that the information CPC seeks is highly confidential and that CPC has not demonstrated why it needs such highly confidential information. *See* Answering Br. 14. The information responsive to CPC's subpoena requests (*see* ER-180-181) is highly confidential, as Apple has always maintained. *E.g.,* ER-97; ER-174. Indeed, if CPC would accept the publicly available information Apple has cited, the parties presumably would not be here. Apple's point is simply that CPC never demonstrated it *needs* this confidential information to bring its hypothetical German suit. *E.g.*, Opening Br. 25-27; ER-176-177. The fact that CPC could file suit based on non-sensitive, public information does not render the highly confidential information CPC is (unnecessarily) seeking here any less sensitive.

Nor, finally, has CPC identified any inconsistency between Apple's contentions that the information CPC seeks is confidential and Apple's arguments in the prior appeal in this case. *Contra* Answering Br. 15. In the prior appeal, the magistrate judge had initially denied CPC's Section 1782 application without Apple filing any opposition. ER-184; ER-213-214. Apple's arguments to this Court were limited to demonstrating that the

magistrate judge's findings—along with the district court's decision upholding them—reflected no abuse of discretion. *See* SER-015. Because the magistrate judge had not relied on the sensitivity of the requested information (ER-186), Apple had no basis or opportunity for pressing that argument on appeal. *See* SER-22-28. But Apple by no means disclaimed the confidentiality of this information. To the contrary, despite this procedural posture, Apple indicated that the information CPC seeks is sensitive. *E.g.*, SER-023 (emphasizing that CPC seeks "the full breadth of information underlying Apple's Touch ID and Face ID technology").

### 2. CPC cannot defend the district court's assumption that a U.S. protective order eliminates any confidentiality concerns

CPC's effort to export Apple's highly sensitive information for use in a hypothetical German lawsuit puts that information at substantial risk. As Apple has explained, these risks stem from two sources—both of which the district court overlooked. Opening Br. 23-25, 29-30; *see* ER-90. *First*, as the Eighth Circuit has correctly recognized, the protections for confidential information in Germany are far more limited than those available in this country. *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 624 (8th Cir. 2016). That risk is magnified here because CPC has not yet filed suit in Germany, making it impossible to determine what protections a German court

might provide, or who else might have access to Apple's information. And Apple cannot enforce any U.S. protective order against a German court, or against any third parties that might gain access to Apple's confidential information in Germany. *See Baxalta Inc. v. Genentech, Inc.*, No. 16-mc-80087, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016). *Second*, while Apple might theoretically seek to enforce a U.S. protective order against CPC itself, a U.S. court has no clear way to ensure CPC's compliance given that CPC is an Australian patent-holding company with no meaningful U.S. presence or assets.

CPC cannot justify the district court's failure to consider these risks. CPC's principal argument is that Apple negotiated, and the district court entered, a protective order that "contains lengthy, specific provisions directed to the treatment of source code." Answering Br. 15-17. But the mere fact that Apple attempted to ensure that its confidential information remains as secure as possible does not mean those protections are adequate. The concern is that a U.S. protective order cannot meaningfully protect this information given the circumstances. *Supra* pp. 13-14; *contra* Answering Br. 18.

CPC's brief does nothing to demonstrate this concern is unfounded. Particularly telling is CPC's attempt to dismiss *Andover*'s discussion of the risks associated with German procedures. In concluding that a Section 1782

14

applicant's request for discovery for use in German litigation would be "unduly intrusive or burdensome" under *Intel*'s fourth factor, the Eighth Circuit emphasized that "there is no firm procedure in Germany to prevent disclosure to in-house counsel," that "interested third parties may have access to the full case file," and that "German courts do not frequently grant requests to exclude confidential information from their decisions." *Andover*, 817 F.3d at 624. A U.S. protective order could not alleviate these concerns, the Court of Appeals continued, because "any order would have to permit disclosure to the German court at a minimum, thus leaving [the respondent's] trade secrets at the mercy of German procedures." *Id.*

CPC's primary response? It argues the Eighth Circuit also separately concluded the first *Intel* factor—whether the respondent was a party to the German litigation—weighed against authorizing Section 1782 discovery. Answering Br. 18 (citing *Andover*, 817 F.3d at 623). While that is true, it is also nonresponsive: the Eighth Circuit's conclusion that the uncertainty of German procedures meant the fourth *Intel* factor weighed against disclosure of confidential information remains fully applicable here. If anything, the fact that CPC has not filed suit against *any* party in Germany only increases the intrusiveness of its request. *Supra* pp. 13-14; *see also infra* pp. 24-25 (explaining the irrelevance of the first *Intel* factor here).

15

CPC also observes that whereas the petitioner in *Andover* discussed a "hypothetical protective order," here the parties have a "negotiated protective order already in place." Answering Br. 18. But the problem the Eight Circuit identified applies equally to the protective order here: a U.S. protective order cannot control a German court, leaving confidential information "at the mercy of German procedures." *Andover*, 817 F.3d at 624. Especially where, as here, a Section 1782 applicant seeks extremely sensitive information for use in German litigation that has not yet even commenced, these uncertain protections counsel against ordering discovery.

Instead of directly addressing this reasoning, CPC cites a handful of district court decisions authorizing discovery for use in Germany. *See* Answering Br. 16, 19-20. All are either distinguishable, unpersuasive, or both. For example, *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004) involved discovery related to already-filed suits in Germany and France alleging infringement of a diaper patent (*id.* at 1113)—not, as here, requests for discovery of source code and other extremely confidential information central to the biometric security measures that secure personal information contained on millions of users' devices, all purportedly for use in a still-hypothetical German suit. And in considering the respondent's confidentiality concerns, the *Proctor and Gamble* court

16

simply asserted that any confidentiality agreement between the parties could be enforced in a U.S. court, without addressing the issues arising from the court's obvious inability to enforce such an agreement against either the German court or any third parties in that proceeding. *Compare id.* at 1117, *with Andover*, 817 F.3d at 624.

Similarly, in *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907 (N.D. Cal. 2019), the district court rejected confidentiality concerns by asserting that "[w]hether the German Court approves of the restrictions placed on the parties [by a U.S. protective order] is irrelevant"—apparently ignoring that a German court's authority to disregard such an order is plainly relevant to the ultimate issue of whether and how confidential information will be disseminated. *Id.* at 917. In *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1 (D.D.C. 2005), the court simply observed that "the parties appear to agree that the German court has a procedure to keep certain documents confidential"; it did not address the limits of those protections, or conduct any meaningful analysis of *Intel*'s fourth factor. *Id.* at 3, 5. And in *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036, 2021 WL 3012355 (E.D. Tex. Jan. 27, 2021), the court did not address German confidentiality protections at all. *See id.* at *4. None of these decisions demonstrates that the district court here was correct to simply assume that a U.S. protective order could obviate any

confidentiality concerns. *See* ER-90. At most, these decisions illustrate that other district courts have occasionally made similarly erroneous assumptions.

Nor, in any event, did any of these decisions confront the second major risk present here: the possibility that CPC—a foreign, non-practicing patent holding company—could violate any U.S. protective order without meaningful consequence. CPC does not explain how the district court could sanction it for violating the protective order. *See* Answering Br. 19-21. Instead, CPC insists it has no incentive to misuse Apple's sensitive information because it is not Apple's direct competitor. Answering Br. 20. One can imagine other motives for misuse—to pressure Apple to settle the serial litigation that appears to be CPC's primary business model, for example. *See* Opening Br. 5-7. But even assuming CPC's good intentions, CPC itself recognizes that a party may violate a protective order "through inadvertence." Answering Br. 18. And without the credible threat of sanctions for violating the protective order, CPC has little incentive to exercise care to ensure that it does not inadvertently disclose Apple's sensitive information and that other parties accessing this information in the hypothetical German litigation maintain its confidentiality. An unenforceable protective order is little better than no protective order at all.

### 3. CPC cannot show the requisite need for the requested information

Finally, even assuming the risks associated with producing this sensitive information could be justified if CPC demonstrated a real need for this evidence, CPC has made no such showing. As Apple explained, even after acquiring substantial confidential information in its U.S. patent litigation against Apple, CPC ultimately relied almost entirely on publicly available documents in moving for summary judgment of infringement. Opening Br. 26. CPC cannot reconcile the fact that it deemed publicly available documents sufficient for meeting its burden on infringement with its claim that it cannot file its prospective German suit without the extremely confidential information it seeks here.

CPC's answering brief does not bridge the gap. Instead, much like the district court (ER-91), CPC again erroneously equates the information it requests in this Section 1782 action with the information it actually needs to initiate its German lawsuit. CPC asserts that Apple has "urged two diametrically opposed propositions"—namely, that "highly confidential information is necessary to make the requested 'sufficient' showing" in response to CPC's subpoena, "while public information is also sufficient for such showing." Answering Br. 22. But to reiterate: Apple has consistently

19

maintained that the information responsive to CPC's subpoena requests is highly confidential, but that CPC has not shown it needs this non-public information to bring its German lawsuit. *Supra* p. 12; Opening Br. 25-27, 31-32; ER-102. Apple has never claimed that public information would satisfy CPC's subpoena requests. Rather, CPC has not established the basic premise of its Section 1782 application: that it actually needs the information it seeks.

CPC's remaining arguments only confuse matters. CPC contends that "Apple has not conceded that the evidence underlying" CPC's summary judgment motion in the U.S. patent litigation "proves infringement," and that CPC is "entitled" to the information it seeks here "unless Apple is willing to concede that the public information it references is sufficient to establish infringement." Answering Br. 22. Of course, Apple denies that CPC could ever establish infringement, whatever information it attempts to use. *See* Opening Br. 26 & n.2. Apple's contention is that, even after having conducted extensive discovery into the sort of confidential information that CPC again seeks here, CPC did not rely on that confidential information in seeking to prove infringement. ER-100-101; *see CPC Pat. Techs. PTY Ltd. v. Apple Inc.*, No. 5:22-cv-02553-EJD, ECF No. 89 at 6, 7, 8, 9, 10, 11, 12, 14 (N.D. Cal. Apr. 13, 2022). Especially given this history, it is significant that CPC has failed to provide any indication that the confidential information it seeks will

provide it any greater ability to initiate its (meritless) German infringement suit. Apple need not "concede" that CPC has a viable infringement claim to make that basic point. *Contra* Answering Br. 22.

Similarly misguided is CPC's argument that "whatever is proportional to the needs of the case in the United States would also be so for a case pending in Germany." Answering Br. 23. To repeat, what is "proportional" for discovery in U.S. litigation—with its robust protections for confidential information—is not necessarily "proportional" for discovery for use in foreign litigation. *Supra* pp. 13-16; Opening Br. 28. Likewise, what is needed to attempt to prove a claim on the merits in ongoing litigation is not necessarily the same as what is needed to commence litigation (CPC of course has no "case pending in Germany," *contra* Answering Br. 23). *Supra* pp. 19-20; Opening Br. 26-27. And critically, while Apple's production of confidential information in the U.S. litigation may have then been "proportional to the needs of the case," CPC subsequently relied on public information that remains fully available to it. *Supra* pp. 20-21. CPC has no justification for ignoring what was learned in the prior U.S. litigation and declaring that anything previously produced is needed now.

\*   \*   \*

Ultimately, CPC echoes the district court (*see* ER-90) in confronting and rejecting straw-man arguments. Apple is not insisting on a bright-line rule precluding the production of source code in Section 1782 proceedings. *Contra* Answering Br. 17. It is not arguing that a protective order can never be sufficient to secure confidential information. *Contra* Answering Br. 19. Nor, certainly, is it somehow arguing that Section 1782 applications should always be denied because litigants can rely on public information. *Contra* Answering Br. 23. Instead, CPC's requests are "unduly intrusive or burdensome" (*Intel*, 542 U.S. at 265) because of a confluence of circumstances present in this case: CPC seeks highly confidential information that cannot be adequately protected by a protective order given the uncertainties surrounding the putative foreign suit and the party bringing it, and CPC does so without showing any need for that information. Because the district court either ignored or illogically dismissed these considerations, it abused its discretion.

### B. The Remaining *Intel* Factors Do Not Support CPC

#### 1. CPC's assertions that it will sue Apple's affiliate do not support its discovery request

As Apple has explained, the district court abused its discretion in two ways when it concluded the first *Intel* factor—whether "the person from whom discovery is sought is a participant in the foreign proceeding" (*Intel*, 542 U.S. at 264)—supported CPC's request for discovery. *See* ER-87. First, the district court erroneously put the burden on Apple to prove this factor weighed against CPC. Opening Br. 33-38. Second, the court erred in deeming this factor relevant where no litigation has yet been filed in any "foreign proceeding." *Intel*, 542 U.S. at 264; *see* Opening Br. 38-39. While each of these legal errors independently warrant reversal, CPC fails to offer a viable defense of either.

As to the first point, CPC does not dispute it should have borne the burden of proof. *See* Answering Br. 25. This Court may therefore accept that legal premise (which is also correct) for purposes of this appeal. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1176 n.6 (9th Cir. 2014). CPC's sole argument is that it met its burden because it "presented evidence that Apple would not be a party to the German action," and Apple responded with "mere speculation." Answering Br. 25 & n.3. But CPC cites no actual "evidence" it presented. Instead, in claiming it would sue "Apple Retail

Germany B.V. & Co. KG" rather than Apple Inc. (ER-116), CPC relied entirely on attorney argument. *See* ER-116; ER-190. And as CPC elsewhere appears to recognize (Answering Br. 13), "attorney argument does not constitute evidence." *United States v. Wilson*, 8 F.4th 970, 973 n.3 (9th Cir. 2021). Given the absence of *any* evidence on this first *Intel* factor, the district court's conclusion that the factor favored CPC because Apple had presented no evidence confirms the court erroneously placed the burden of proof on Apple. ER-87.

As to the second point, CPC does not explain why this first *Intel* factor remains relevant where CPC's Section 1782 application seeks information to *commence* a foreign proceeding. Instead, CPC offers an apparent non sequitur, contending that Apple's "assertion that CPC does not actually 'need' the information sought" is "unrelated to whether Apple would be a party to a German proceeding." Answering Br. 25. If anything, that proves Apple's point. Given that CPC has not sued *anyone* in Germany, it could theoretically identify any party as its intended defendant. But the purpose of this *Intel* factor is to help assess a Section 1782 applicant's need for the requested information. *Intel*, 542 U.S. at 264. Here, as CPC concedes, whether CPC intends to sue Apple or Apple's German affiliate in CPC's potential German lawsuit is "unrelated" to CPC's need for the information it requests.

Answering Br. 24.  In other words, assuming CPC has shown any need for this information in the first place (*but see supra* pp. 19-21), the fact that CPC has asserted it will sue Apple's German affiliate rather than Apple does nothing to increase that showing of need.  This *Intel* factor accordingly adds nothing to the strength of CPC's Section 1782 application.  The district court erred in concluding otherwise.  *See* ER-87.

### 2.   CPC's attempt to justify the district court's resolution of the second and third *Intel* factors contradicts the court's findings

The district court took it upon itself to raise and then resolve the two *Intel* factors it expressly acknowledged the "parties d[id] not address," holding both weighed in CPC's favor.  ER-88.  As Apple has explained (Opening Br. 39-45), in reaching that conclusion, the court violated the basic rule that the parties, not the court, are responsible for "framing the issues for decision." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation omitted).

Tellingly, CPC does not attempt to defend either of the district court's rationales for reaching these two *Intel* factors.  *Compare* ER-14, *with* Answering Br. 26-28.  CPC does not dispute that a court's authority to identify the legal principles governing issues the parties have raised (*e.g.*, *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013)) grants the court no license to raise and resolve issues the parties have not raised.  *Contra* ER-14.  Nor does

25

CPC contend that the standard of review the court applied to the magistrate judge's determination bears on whether the court could *sua sponte* raise and resolve entirely new issues. *Contra* ER-14.

Instead, CPC presses two new justifications. Answering Br. 27. Even if these newfound rationales could be considered (*but see supra* p. 10), neither supports the district court's decision.

*First*, CPC argues the district court was wrong to find that neither party addressed these factors. Answering Br. 27 & n.4. CPC appears to rely on a brief footnote from its motion for de novo review of the magistrate judge's report. *See* ER-117 n.9. But there, CPC offered only a cursory argument on the second and third *Intel* factors, asserting that "[t]here is nothing suggesting that the German court will not be receptive to the discovery received in this action and there is no evidence of an attempt to circumvent German proof-gathering restrictions or policies." ER-117 n.9. Such a conclusory footnote is insufficient to raise an issue. *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996) ("[S]ummary mention of an issue in a footnote, without reasoning in support of the [party's] argument, is insufficient to raise the issue on appeal."); *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1188 (9th Cir. 2013) (party "failed properly to raise the issue" in district court by making argument "buried in the middle of a section" about another issue).

Indeed, CPC itself recognized its footnote had not adequately raised these issues. CPC expressly requested an opportunity for "supplemental briefing" if the district court were to "revisit" the magistrate judge's finding that these two factors were neutral. ER-116. Especially in these circumstances, the district court did not abuse its discretion by finding that CPC "d[id] not address" the second and third *Intel* factors.[3] ER-88.

*Second*, CPC contends the magistrate judge inaccurately "characteriz[ed] the second and third *Intel* factors as neutral, when they in fact supported granting CPC's petition," and that Apple therefore should have challenged the magistrate judge's finding before the district court. Answering Br. 27-28. This argument is difficult to follow. Whatever CPC thinks the

---

[3] To the extent CPC also relies on other, prior briefing (*cf.* Answering Br. 26, citing ER-192-194 and SER-61-63), it again does nothing to undermine the district court's finding that CPC did not address these *Intel* factors. To start, these filings were from *before* CPC's prior appeal—not the briefing on remand that led to the relevant magistrate judge and district court determinations at issue here. *See* Answering Br. 26. And even if relevant, these filings featured only the most limited discussion of these issues. Both contained two one-sentence arguments stating that "German courts are receptive to receiving evidence obtained in the United States" and that there "is no evidence that German courts prohibit the discovery sought in the instant petition." ER-193; SER-62. CPC did not expressly connect these assertions to the second and third *Intel* factors. Nor did it address all the considerations relevant to those factors, including "the nature of the foreign tribunal, the character of the proceedings underway abroad," or the possible circumvention of "policies of . . . the United States." *Intel*, 542 U.S. at 264.

27

magistrate judge *should* have found, the magistrate judge expressly accepted
Apple's contention that the second and third *Intel* factors were neutral. *See*
ER-165 (finding "[t]he first three *Intel* discretionary factors are neutral and do
not weigh in favor of or against granting CPC's application," citing Apple's
brief "asserting that the first three *Intel* factors are neutral"). Because Apple
agreed with that finding, and CPC did not meaningfully challenge it, Apple
had no reason to address these issues in opposing CPC's motion for de novo
review.

CPC appears to contend that Apple should have nevertheless
challenged the magistrate judge's statements (1) that German courts are
"generally receptive" to U.S. discovery assistance, and (2) that "Apple does
not assert that CPC's request is an attempt to circumvent foreign proof-
gathering restrictions." ER-165; *see* Answering Br. 27-28. Yet both
statements were entirely consistent with Apple's position (shared by the
magistrate judge) that the second and third *Intel* factors are neutral. Apple
thus had no reason to dispute them. That German courts "generally" accept
U.S. discovery assistance may be a reason to find the second *Intel* factor does
not *preclude* CPC's request. ER-165. But that consideration is
counterbalanced by others, including the uncertain protections afforded in
German courts. Opening Br. 42-43; *see Intel*, 542 U.S. at 264 (second *Intel*

factors requires consideration of "the nature of the foreign tribunal" and "the character of the proceedings underway abroad"). Similarly, it was true that "Apple [did] not assert" that CPC was attempting to "circumvent foreign proof-gathering restrictions." ER-165. But the third *Intel* factor nevertheless does not weigh in CPC's favor because CPC's request circumvents *U.S.* policy by evading an existing U.S. protective order. Opening Br. 43 (citing *Intel*, 542 U.S. at 264). The district court erroneously deprived Apple of an opportunity to brief these issues.

### III. IN THE ALTERNATIVE, VACATUR AND REMAND IS WARRANTED GIVEN SUBSEQUENT DEVELOPMENTS

Even assuming the district court did not err in granting CPC's application on the record before it, subsequent developments warrant reexamination of that conclusion. *See Khrapunov*, 931 F.3d at 926 (vacating order granting Section 1782 application and remanding for consideration of subsequent developments). Specifically, the PTAB's invalidation of the American patent claim corresponding to the German patent claim CPC asserts will be the basis for its German suit provides ample additional reason to doubt that CPC should secure the invasive discovery it seeks. Opening Br. 45-48.

CPC's contrary arguments miss the mark. CPC asserts the PTAB's decision will not be binding in Germany. Answering Br. 29. Apple has not argued otherwise. Rather, the PTAB's determination that the asserted claim

29

in CPC's '705 patent is obvious (*Apple Inc. v. CPC Pat. Techs. PTY, Ltd.*, No. IPR2022-00602, 2023 WL 6617490, at \*27 (PTAB Sept. 27, 2023) (Patent 9,665,705 B2)) provides an objective indication that CPC's contemplated suit premised on "the German patent corresponding to the '705 patent" (ER-190) lacks merit. That, in turn, bears on both the nature of the proceedings abroad and the balancing inquiry required to determine if CPC's requests are unduly invasive and burdensome. *See* Opening Br. 47-48; *Khrapunov*, 931 F.3d at 926. The PTAB's determination need not by itself preclude CPC's hypothetical German lawsuit for it to confirm that CPC cannot establish its entitlement to the invasive discovery it seeks.

CPC also emphasizes that the German proceedings to invalidate CPC's German patent would be distinct from CPC's infringement action. *See* Answering Br. 29-30. The relevance of this point is unclear. If CPC brings an infringement suit against Apple in Germany, Apple will undoubtedly bring a "nullity" action to invalidate CPC's German patent. As the PTAB's decision demonstrates, that action would likely succeed. And CPC cannot, of course, claim infringement of an invalidated patent. That the validity of CPC's German patent will be litigated in a separate proceeding does not change the fact that the PTAB's decision provides a strong indication that CPC's contemplated infringement action lacks merit.

CPC's discussion of the hypothetical German court's "receptivity" to evidence of the PTAB's decision only confuses matters. *See* Answering Br. 30. The question is whether a German court would be "receptiv[e]" to the evidence CPC seeks in this Section 1782 proceeding. *Intel*, 542 U.S. at 264. If the German infringement suit is dismissed because CPC's patent is invalid, a German court would have no need to accept the extremely confidential information CPC seeks here. *See Khrapunov*, 931 F.3d at 926 ("the courts' treatment of Khrapunov's claims (including one judge's conclusion that Khrapunov's position was 'totally without merit'), likely bear on . . . the 'receptivity' of the English courts 'to U.S. federal-court judicial assistance'") (quoting *Intel*, 542 U.S. at 264).

For similar reasons, CPC's effort to distinguish this Court's *Khrapunov* decision fails. CPC argues that in *Khrapunov*, "developments in an ***English*** litigation warranted *vacatur* of a Section 1782 order for evidence to be used in that litigation," whereas here the relevant developments occurred in the United States. Answering Br. 29. That is a distinction without a difference. While the new factual developments in *Khrapunov* happened to involve the foreign litigation, this Court nowhere suggested that *only* foreign developments could warrant reevaluating the grant of a Section 1782 application. *See* 931 F.3d at 925-26. Here, just as in *Khrapunov*, the critical

31

point is that subsequent developments "relevant to the discretionary factors courts consider when evaluating § 1782 applications" warrant reassessment of those factors. *Id.* at 926.

## CONCLUSION

For the reasons set forth above and in Apple's opening brief, the district court's order should be reversed. In the alternative, the order should be vacated and the case remanded for further proceedings.


DATED: May 28, 2024        Respectfully submitted.



       /s/ James R. Sigel

| | |
|---|---|
| SETH SPROUL | JAMES R. SIGEL |
| FISH & RICHARDSON, PC | DAVIS WRIGHT TREMAINE LLP |
| 12860 El Camino Real | 50 California Street |
| Suite 400 | 23rd Floor |
| San Diego, CA 92130 | San Francisco, CA 94111-4701 |
| Telephone: (858) 678-4343 | Telephone: (415) 276-4850 |
| Email: sproul@fr.com | Email: jamessigel@dwt.com |

*Counsel for Respondent-Appellant Apple Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  23-3449

I am the attorney or self-represented party.

**This brief contains**  6,984  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⭘ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⭘ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⭘ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⭘ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

⭘ complies with the length limit designated by court order dated _____.

⭘ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ James R. Sigel  **Date**  May 28, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system on May 28, 2024.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: May 28, 2024          /s/ James R. Sigel_____
                                        James R. Sigel